**Jack Dempsey SCOTT, Plaintiff in Error,**

v.

**The STATE of Oklahoma, Defendant in Error.**

**No. A–14944.**

Court of Criminal Appeals of Oklahoma.

May 13, 1970.

Carloss Wadlington, Ada, for plaintiff in error.

G. T. Blankenship, Atty. Gen., Dale F. Crowder, Asst. Atty. Gen., for defendant in error.

## MEMORANDUM OPINION

BUSSEY, Judge.

Jack Dempsey Scott, hereinafter referred to as defendant, was charged by Information in the District Court of Pottawatomie County, with the crime of Armed Robbery, Subsequent Offense; he was tried by a jury who found him guilty of Robbery with Firearms, Subsequent Offense, on the 23rd day of November, 1955, and left the punishment to be fixed by the court. Thereafter, the court sentenced the defendant to a term of sixty years imprisonment in the state penitentiary at Mc-Alester. From said judgment and sentence, a post conviction appeal has been granted by this Court.

The facts adduced on the trial reveal that around 3:00 o'clock in the morning of August 15, 1955, Mr. L. H. Boylan, owner of the Shawnee Motel Courts on North Harrison Street, was awakened when the bell rang. He had a vacancy at the motel and went to answer the door. When he

unhooked the screen door, the defendant asked him if he had a vacant room and he replied that he did. Upon entering the room Mr. Boylan noticed that the defendant had a stocking pulled down over his face and he held a revolver in his hand; at which point the defendant told him he wanted his money and ordered Mr. Boylan to the back of the room and made him give him his billfold. After taking the money from the billfold, the defendant went through the boxes, the tables, drawers, etc. and made Mr. Boylan lay down on the studio couch. All this time the defendant wore the stocking over his face, wore a pair of white flannel gloves, and kept the gun pointed at Boylan. Mrs. Boylan, in the meantime, had awakened and she could see what was going on and slipped out and called the police. The police happened to be six or seven blocks from the motel in the patrol car when they received the call and immediately proceeded to the motel. The three officers answering the call were Bill Chandler, Raymond Block and Bill Willis. Before these officers arrived at the motel, a Mr. and Mrs. Lyons from Oklahoma City, came to the motel and Mr. Lyons rang the bell, seeking a room. Mr. Lyons was admitted to the room at which point Mr. Boylan said, in the hearing of Mrs. Lyons, "Come on in, we're having a holdup here." and Mr. Lyons immediately raised his hands. The defendant asked Mr. Lyons for his money. Mr. Lyons pulled three one dollar bills from his pocket and tossed them on the floor and then handed him his pocketbook. The defendant then directed the two men to a closet. Mr. Lyons entered the closet, but there was not room for Mr. Boylan and Boyland went in the bathroom. The defendant closed the doors and tried to fasten them, but was unable to do so, and he then left.

Mrs. Lyons, in the meantime, started for help and about that time the patrol car drove up. The officers proceeded around to a window on the north side of the building, they looked through a crack in the air conditioner and they could see the defendant with the silk stocking over his face, holding a gun on these two men. Mr. Chandler tried to get around so that he could shoot the robber, but could not without endangering the people in the room; then all three officers stationed themselves so they could apprehend the defendant when he came from the building.

The defendant came out the front door, pulled the stocking off of his head, and Mr. Chandler told him to halt and drop the gun. When he did this, the defendant ran and as he rounded the corner of the building he ran into Bill Willis, who also told him to stop. The defendant started shooting at Mr. Willis and then proceeded on around the building, started to run between some buildings and Mr. Block told him to stop, but instead he kept shooting at the officers. Mr. Block then shot the defendant in the hand and the officers found him between the two buildings with the gun. He had been shot in the hand, he had a mask and a silk stocking and white gloves. The officers apprehended him. All the witnesses identified the robber as the defendant.

The defendant was taken to the hospital where, subsequently, Bill Holt, then Chief of Police, testified to a conversation he had with the defendant in said hospital, wherein he asked the defendant what had happened and the defendant related, "Well I didn't intend to kill them." When asked who he did not intend to kill, the defendant replied, "the officers."

Arnold Crawford was a witness for defendant, and stated that he lived at Duncan and was employed by Halliburton and was a nephew of defendant and that prior to May, 1953, the defendant was normal; that in May, 1953, the defendant was injured in a car accident; and this witness was notified when the accident happened and rode with the defendant in an ambulance to Oklahoma City, and that part of defendant's brains were exposed; that defendant was taken to St. Anthony's Hospital in Oklahoma City, and Dr. Lisle removed part of the brain. That after the injury to defendant he did not appear to be

normal and was nervous, and at times, would complain that someone, or people, were chasing him.

Minnie West, a witness for defendant, testified that she lived at Duncan and was a sister of the defendant and that after defendant received the head injury in 1953 he was not normal, and testified to strange actions by defendant after the head injury.

Gene Smith testified that he lived at Duncan; had known defendant well since 1930 and was a friend of his; that after the accident in which defendant was injured, the defendant's actions were not normal and he apparently was having delusions that he was being chased and that one time when the defendant was out of his head he cut the witness on the shoulder with a knife.

George Brown testified that he lived at Comanche and had been a Deputy Sheriff for Stephens County and the defendant had been a whiskey wholesaler; that the defendant has an obvious scar on his head and has had it since the automobile accident in 1953; that the witness had known him before the accident and there was nothing wrong with him, and testified of strange actions by the defendant since he was injured. He further stated that at one time in November, 1953, the defendant had five to seven thousand dollars in his pockets and in a paper sack in bills and had run his car off in a ditch and did not appear to know what he was doing and was crazy.

The defendant, Jack Scott, was a witness and testified about his previous convictions, and said he did not remember anything about the alleged robbery in this case.

Dr. C. C. Young testified that he had examined the defendant and treated his wounded hand, and testified that the brain injury which the defendant had received was to the area called the cerebral cortex which controls memory loss, memory and personality and motion and that such injury would affect those things in the individual and would have brought about a change in personality.

The defendant was recalled and on further cross-examination was asked by the County Attorney as to whether he remembered about his conviction of Possession of Narcotics being upheld against him by the Court of Criminal Appeals. Defendant's counsel objected. The defendant did not admit such conviction in his testimony, and this was not proved by the State.

In rebuttal the State called as a witness Jim Harrington, the Sheriff of Pottawatomie County, who testified that he had transported the defendant to the penitentiary for safekeeping and had a conversation with him and the defendant could hear and answer questions and converse in a normal conversation.

Charlie Cobb, a Deputy Sheriff, testified that he had talked to the defendant while the defendant was in the hospital in Shawnee about the second night after the robbery. This seemed to show that he could carry on a normal conversation.

Otis Treat testified that he was Deputy Sheriff of Pottawatomie County and that he had guarded the defendant at the City Hospital and had conversations with him and that the defendant could carry on a conversation.

██ It is first argued on appeal that reversible error was committed by the trial court since defendant did not have counsel present at the time the court received the return of the verdict by the jury. The defendant cites authorities which hold, in effect, that at the return of the jury's verdict the one charged has a right to the presence of counsel. With this we agree; however, in the case at bar, it was intelligently waived not only by the defendant but by his counsel as well. Page 210 of the case-made adequately reflects a waiver by the defendant and his counsel of this right and the relevant part is as follows:

"THE COURT: I want to say to the defendant, your lawyer isn't here. He called just now and told me to go ahead and receive the verdict. And that's one reason I have polled the jury like I have

to be sure that they all agree on this verdict."

Neither the defendant nor his counsel raised any objection to the action taken by the trial court in the absence of defendant's attorney.

■ The objection to the court's instructions which defendant now makes has no merit since any objection the defendant ever had has long since been waived. On November 21, 1955, the defendant filed a Motion for New Trial, but of the four assignments of error alleged, none ever hinted that the defendant was dissatisfied with the instructions given by the court to the jury. In the third paragraph of the syllabus in Welch v. State, 43 Okl.Cr. 47, 277 P. 280, we stated:

"Where defendant requests that the jury assess the punishment, and they return a verdict finding defendant guilty and state in the verdict that they are unable to agree upon the punishment, and no objection is made *at the time the verdict is received* that the jury have not deliberated sufficiently upon the punishment, *the error,* if any, in failing to require the jury to longer deliberate *is waived.*" [Emphasis added]

In the *Welch* case this court indulged in the presumption that since defendant made no objection he must be satisfied with the form of the verdict. The defendant in the *Welch* case raised his objection for the first time in his Motion for New Trial and was unsuccessful. In the instant case the defendant does not raise the question until his post conviction appeal some 13 years later.

And further, in Born v. State, Okl.Cr., 397 P.2d 924, certiorari denied, 379 U.S. 1000, 85 S.Ct. 718, 12 L.Ed.2d 701, in the ninth paragraph of the syllabus, we stated:

"If counsel for the accused had thought that the verdict was irregular or not in proper form, he should have objected to its sufficiency *at the time it was returned into court,* so as to give the trial court an opportunity to have the verdict

corrected before the jury was discharged." [Emphasis added]

We are of the opinion that the defendant clearly waived these objections and this assignment of error is without merit.

■ We will next consider defendant's assignment of error that the punishment imposed was excessive. From the recital of testimony it is clear that the defendant was caught red-handed at the scene of the robbery and he attempted to shoot it out with the police. These facts, standing alone, would support a greater sentence than that imposed had it been the defendant's first offense, and in view of the fact that the defendant had previous felony convictions, we are of the opinion that he should consider himself fortunate that he did not receive a greater sentence. We have repeatedly held, as we stated in Johnson v. State, Okl.Cr., 386 P.2d 336, that:

"* * * the question of excessiveness of punishment must be determined by a study of all the facts and circumstances is each particular case, and the Court of Criminal Appeals does not have the power to modify a sentence unless we can conscientiously say that under all facts and circumstances the sentence is so excessive as to shock the conscience of the court. McCluskey v. State, Okl.Cr., 372 P.2d 623."

■ It is next contended that the trial court erred in not appointing counsel until one day before trial. In this connection we observe that on November 14, 1955, the defendant's attorney was appointed. On November 15th of the same year the defendant, through his attorney, announced ready for trial and the jury was empaneled. After the jury was empaneled the court recessed until November 17th at which time the State put on its case in chief. On November 18th the defendant presented its defense and after resting his case the defendant was allowed to reopen his case. In view of the fact that the defendant was caught in the commission of the robbery and hospitalized as a result of injuries received in the gunfight with the

police, the only avenue available to counsel was the course which he pursued, namely, presenting the defense of insanity as a result of injuries received in a prior automobile accident. That he was able to contact witnesses and prepare for trial is evidenced from even the most cursory examination of his opening statement (pages 105–109 of the casemade), coupled with the fact that he called several witnesses whose testimony is earlier reflected in this opinion. We believe the record discloses extreme diligence in making preparation by the court-appointed attorney and it is doubtful had he been given as much as six months time to prepare, that he would have called any other witnesses or presented any other defense, since under the circumstances it appears to have been the only reasonable defense to be offered. Undoubtedly, counsel was satisfied with his preparation or he would have asked for a continuance and would have been granted the same upon the slightest showing of a need for additional time. It is highly probable that the defendant urged counsel to proceed with the trial since further delay would have resulted in his remaining incarcerated in the Pottawatomie County jail.

Finding this assignment of error without merit, we shall next consider the defendant's contention that "the court erred in permitting the county attorney to ask defendant as a witness questions about an alleged previous conviction which the county attorney evidently was not prepared to prove and did not prove."

■ We are of the opinion that this assignment of error is wholly without merit for the defendant neither admitted, nor denied his prior conviction for Possession of Narcotics which was affirmed by this Court and is reported at 289 P.2d 393; hence, it is apparent that the county attorney was not obliged to offer evidence to refute defendant's denial since none was made. Even had the defendant denied it, it is quite obvious that the county attorney was in good faith and knew that the conviction had been affirmed as evidenced by

his reference to the Court of Criminal Appeals case number.

■ Defendant next contends that the court erred in admitting evidence of alleged prior convictions which did not show the defendant had counsel or waived the same in the proceeding, resulting in the alleged prior convictions. Counsel for defendant concedes that the alleged prior conviction was affirmed by this Court in case numbered A–9824, Scott v. State, 72 Okl.Cr. 305, 115 P.2d 763. Although the judgment and sentence admitted into evidence by stipulation did not contain a statement that the defendant was represented by counsel, such was not required at the time of trial, and the Court will take judicial notice that the casemade in A–9824 reflects that Jerome Sullivan of Duncan, Oklahoma, represented the defendant during the trial and on appeal.

The defendant's last contention has been previously ruled on in Scott v. Raines, Okl.Cr., 373 P.2d 267, and will not be dealt with in this opinion; suffice it to say that this assignment of error also is without merit.

For all the reasons above set forth, the judgment and sentence appealed from is affirmed.

TOM BRETT, P. J., and NIX, J., concur.