600 P.2d 1370

**Ernestine J. IBACH, Appellant,**

v.

**Maxwell Russell IBACH, Jr., Appellee.**

**No. 14307–PR.**

Supreme Court of Arizona,
In Banc.

Sept. 10, 1979.

Rehearing Denied Oct. 10, 1979.

Norman R. Freeman, Tucson, for appellant.

Slutes, Browning, Zlaket & Sakrison by Thomas A. Zlaket, Tucson, for appellee.

STRUCKMEYER, Vice Chief Justice.

Ernestine J. Ibach brought this consolidated appeal from an order of the Superior Court quashing certain writs of garnishment and from a judgment in the amount of $1,050.00. The Court of Appeals reversed and ordered the trial court to enter judgment in favor of appellant in the sum of $8,660.00. Opinion of the Court of Appeals, *Ibach v. Ibach,* 123 Ariz. 512, 600 P.2d 1375 (App.1979), vacated. Judgment of the Superior Court reversed in part and affirmed in part.

The parties to this action were divorced in Pima County Superior Court on September 2, 1971. In a property settlement agreement made a part of the decree, appellee agreed to pay his former wife $250.00 per month for spousal maintenance. Appellee, while living in Colorado in February of 1973, unilaterally reduced the amount of the monthly payments from $250.00 to $75.00 per month. Appellant then brought an action pursuant to the Revised Uniform Reciprocal Enforcement of Support Act (A.R.S. § 12–1651 et seq.; Colo.Rev.Stat. § 14–5–101 et seq.) through the Pima County Attorney's Office. Appellee was served with a complaint in Colorado, to which he filed an answer. He also filed a separate motion asking the court to abate or reduce support. At a hearing conducted in the Colorado District Court on August 29, 1973, the court said:

"I have reviewed the entire picture. This man is having a difficult time adjusting to civilian live [sic]. He has been out, I don't know, couple of years, but his total income is $690.00 a month, from which his wife—his present wife has purchased a home and you are asking him to pay $250.00 a month to his first wife while she lives in a four-bedroom home in Tucson with a swimming pool, two automobiles, a '70 Maverick, a '69 Buick and sure, it is tough for her, I admit it's tough for her, but it is tough on all of us who are on fixed incomes. It is tough on us too and if it was child support I look at it one way, but I think for alimony, she is going to have to look elsewhere for income. She may have to get a part-time job if she wants to maintain a four-bedroom home and swimming pool and two automobiles.

And these children are old enough to support themselves and if they are living at home, they should. And I think the fair and reasonable amount of support ordered by this Court will be in the amount of $75.00 a month."

A minute entry dated August 29, 1973 provided "defendant shall pay the sum of $75. per month for support and maintenance."

In February, 1976, appellee again unilaterally reduced the support payment, this time from $75.00 per month to $40.00 per month. Appellant instituted another action. The Colorado court ordered appellee to pay $40.00 per month commencing in June, 1976. It found that appellee was $220.00 in arrears, and ordered him to pay

an additional $25.00 per month until the arrearage was liquidated. It further ordered that all support be terminated twelve months after the arrearage was paid.

On November 26, 1976, appellant caused a writ of garnishment to be issued and served upon the United States of America, seeking to garnish appellee's Air Force retirement pay. Appellee filed a motion to quash the writ of garnishment in December, 1976, but before the motion was heard, appellant issued further writs of garnishment. The Pima County Superior Court entered an order quashing all outstanding writs of garnishment on February 11, 1977. The court also ordered a further hearing to determine the validity of the Colorado decisions and the amount of the support payments due appellant.

On March 22 and 28, 1977, a hearing was held. Counsel for the parties stipulated that if the original support obligation of $250.00 per month was still in effect, appellee owed $8,660.00 as of the end of February, 1977; but if the original support obligation was modified by the Colorado orders, appellee was in arrears only $1,050.00.

At about this time, it was discovered that no formal order was signed by the Colorado District Court following the August 29, 1973 hearing. After reading a transcript of the proceedings, an order was signed on March 4, 1977, *nunc pro tunc* as of August 29, 1973, modifying the support order by reducing the payments from $250.00 to $75.00 per month. The Pima County Superior Court held that the Colorado orders were valid and on March 8, 1978, a formal judgment was filed in favor of appellant in the amount of $1,050.00.

Appellant's first point is that the trial court improperly quashed the writs of garnishment issued to collect the spousal maintenance arrearages. In this respect, it is clear the court erred:

"In Arizona, installments of spousal maintenance and child support become vested when they become due. *McClanahan v. Hawkins*, 90 Ariz. 139, 367 P.2d 196 (1961); *Baures v. Baures*, 13 Ariz.App. 515, 478 P.2d 130 (1970); *Badertscher v. Badertscher*, 10 Ariz.App. 501, 460 P.2d 37 (1969). Each installment as it becomes due is in the nature of a final judgment conclusively establishing the rights and duties of the parties to that installment. *Adair v. Maricopa County Superior Court*, 44 Ariz. 139, 33 P.2d 995 (1934). In fact, execution may issue for the collection of past due installments without the necessity of obtaining a new judgment. See *Schuster v. Merrill*, 56 Ariz. 114, 106 P.2d 192 (1940); *Chudzinski v. Chudzinski*, 26 Ariz.App. 130, 546 P.2d 1139 (1976); *Bruce v. Froeb*, 15 Ariz.App. 306, 488 P.2d 662 (1971)." *Jarvis v. Jarvis*, 27 Ariz. App. 266, 267–68, 553 P.2d 1251, 1252–53 (1976).

When an installment for support becomes due, the person entitled to it may utilize all remedies customarily available to judgment creditors. *Sanchez v. Carruth*, 116 Ariz. 180, 568 P.2d 1078 (App.1977).[1]

Appellant next argues that the Uniform Reciprocal Enforcement of Support Act does not confer jurisdiction upon a state court to modify another state court's orders but that it was enacted solely to aid a person in enforcing a duty of support;

---

1. Shortly after the decision in *Sanchez v. Carruth*, supra, was published, the Legislature, passed A.R.S. § 12–2455. It provides:

   "Any judgment, order or decree, whether arising from a dissolution, divorce, separation, annulment, custody determination, paternity or maternity determination or from Uniform Reciprocal Enforcement of Support Act proceeding and any interlocutory support award in any such proceeding or in any other proceeding regarding support which provides for alimony, spousal maintenance or child support may be enforced as a matter of right by execution, attachment, garnishment, levy, appointment of a receiver, provisional remedies or any such other form of relief provided by law as an enforcement remedy for civil judgments. An affidavit regarding all payments in default under such support order, along with a copy of such underlying support order, shall be filed with the clerk of the superior court along with the appropriate writ, application, petition or motion."

consequently, the Colorado court could not modify the support provisions of the Arizona divorce decree.

Section 31 of the Revised Uniform Reciprocal Enforcement of Support Act (1968) (A.R.S. § 12–1680; Colo.Rev.Stat. § 14–5–132 [2] provides:

"A support order made by a court of this State pursuant to this Act does not nullify and is not nullified by a support order made by a court of this State pursuant to any other law or by a support order made by a court of any other state pursuant to a substantially similar act or any other law, regardless of priority of issuance, unless otherwise specifically provided by the court. Amounts paid for a particular period pursuant to any support order made by the court of another state shall be credited against the amounts accruing or accrued for the same period under any support order made by the court of this State."

This provision was incorporated in the Revised Act of 1968 in order to bring to an end the problem of whether a court in the state where the enforcement of a support order is sought can modify support payments specified by a decree of a sister state. W. Brockelbank and F. Infausto, INTERSTATE ENFORCEMENT OF FAMILY SUPPORT, 65–67 (2d ed. 1971). "Under the statute the court in the responding state may fix the support payment at a different amount than that specified by the judgment in the initiating state." *Chisholm v. Chisholm*, 197 Neb. 828, 830, 251 N.W.2d 171, 173 (1977).

Appellant argues that in spite of the fact she initiated an action for overdue support and appeared in the Colorado proceedings, the court lacked personal jurisdiction over her, and could not validly modify the Arizona support order. She cites Section 32 of

the Uniform Act [3] (A.R.S. § 12–1681; Colo. Rev.Stat. § 14–5–133), which provides: "Participation in any proceeding under this act does not confer jurisdiction upon any court over any of the parties thereto in any other proceeding."

However, Section 32, as generally interpreted, does not prohibit a court from deciding whether a plaintiff is entitled to support, and, if so, in what amount. It "precludes counterclaims based merely on the theory that the plaintiff, by initiating the procedure  *  *  *, has submitted herself to the jurisdiction of the court of the responding state for other purposes." *Thibadeau v. Thibadeau*, 133 Ga.App. 154, 156, 210 S.E.2d 340, 343 (1974). Hence, when a person initiates an action for support under the Uniform Act, the respondent cannot counterclaim for divorce. *Blois v. Blois*, 138 So.2d 373 (Fla.App.1962), or raise issues concerning "child custody or visitation privileges or other matters commonly determined in domestic relation cases." *Pifer v. Pifer*, 31 N.C.App. 486, 489, 229 S.E.2d 700, 703 (1976).

A support order entered in a responding state pursuant to Section 31 of the Uniform Act, quoted supra, does not nullify a support order of this state "unless otherwise specifically provided by the court" of our sister state. Appellant argues that the record of the hearing in Colorado does not indicate that the Colorado court specifically nullified the Arizona support decree as required by Section 31, and that the later *nunc pro tunc* judgment, which did modify the Arizona decree, is void because it caused to be placed on record a judgment which was never in fact entered by the Colorado court.

The validity of a foreign judgment must be determined from the laws of

---

**2.** Both the Arizona and Colorado legislatures made minor language changes in adopting Section 31 of the Uniform Act. These changes do *not affect the section's substance.*

**3.** Section 28 of the Act as amended in 1952. Section 31 of the Act as amended in 1958. Now Section 32 of the Revised Act, adopted both in Arizona and Colorado with minor language changes not affecting substance.

the state where the judgment was rendered. *Day v. Wiswall*, 11 Ariz.App. 306, 464 P.2d 626 (1970); and see *Searl v. Searl*, 34 N.C.App. 583, 239 S.E.2d 305 (1977). Under Colorado law, a court is empowered to correct clerical errors in judgments and orders so that the record will accurately reflect the action taken by the court. *Oman v. Oman*, 477 P.2d 472 (Colo.App.1970).

" 'The term "clerical error" * * * must not be taken in too narrow a sense. It includes not only errors made by the clerk entering the judgment, but also those mistakes apparent on the face of the record, whether made by the court or counsel during the progress of the case, which cannot reasonably be attributed to the exercise of judicial consideration or discretion.' " *Telluride Co. v. Division Engineer in and for Water Division No. 4*, 575 P.2d 1297, 1298 (Colo.1978), *quoting Bessemer Irrigating Ditch Co. v. West Pueblo Ditch & Reservoir Co.*, 65 Colo. 258, 176 P. 302 (1918).

The Colorado court had before it for consideration the petition of Ernestine Ibach for enforcement of the Arizona support obligation and Maxwell Ibach's motion to reduce or abate support. The court heard testimony from both parties covering their present circumstances. While the Colorado court may not have specifically announced that it intended to modify the Arizona support order, the issue of whether to enforce it or to modify it was before the court. The Colorado court, by ordering Maxwell to pay $75.00 per month, obviously intended to modify the Arizona support decree. Failure to have a written judgment entered immediately following the Colorado hearing was a mistake by the attorneys or the trial judge which was a clerical error under Colorado law. The Colorado court was empowered to enter the *nunc pro tunc* judgment since the failure to enter an appropriate judgment cannot be attributed to judicial discretion. Moreover, appellant does not suggest that the delay of three and one-half years in entering the *nunc pro tunc* judgment was prejudicial to her. She apparently recognized that the Colorado court had modified the Arizona support decree since she took no further action against appellee when he continued to send her $75.00 per month. It was only after appellee reduced the payments to $40.00 per month that she brought another action. On these facts, the Pima County Superior Court correctly determined that the Colorado judgment, entered *nunc pro tunc*, was entitled to full faith and credit.

The judgment of the Superior Court quashing appellant's garnishments is reversed, and awarding appellant $1,050.00 in support arrearages affirmed.

CAMERON, C. J., and HAYS, HOLOHAN and GORDON, JJ., concur.