*In re* MARRIAGE OF JANICE GIFFORD, Plaintiff-Appellee, and ROBERT GIFFORD, Defendant-Appellant.

First District (4th Division)   No. 85—2771

Opinion filed January 29, 1987.

McMORROW, P.J., dissenting.

Kanter & Mattenson, Ltd., of Chicago (David M. Mattenson, Stuart Gordon, and William J. Arendt, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (David M. Lavin and Mark S. Romano, Assistant State's Attorneys, of counsel), for appellee.

JUSTICE LINN delivered the opinion of the court:

Plaintiff, Janice Gifford, filed a post-decree petition in the circuit court of Cook County against defendant, Robert Gifford, which alleged an arrearage in excess of $18,400 pursuant to an Illinois child-support order. Plaintiff's and defendant's marriage had been dissolved in Illinois in 1981. Pursuant to that dissolution defendant had been directed to pay plaintiff the sum of $154.43 per week for child support. Subsequent to the entry of that dissolution judgment, defendant moved to Michigan and fell behind in his support payments. Plaintiff then filed a Revised Uniform Reciprocal Enforcement of Support Act

(hereinafter URESA) complaint in Illinois seeking enforcement of the order of support in the State of Michigan. The complaint was then forwarded to Michigan, where a hearing was held. After that hearing, the Michigan trial court found a duty of support on the part of defendant, but it then prospectively lowered defendant's obligation as to child support. In response, plaintiff filed a rule to show cause in Illinois. After a hearing, the circuit court held that the modified support order entered by the Michigan court did not affect the Illinois marital-dissolution judgment and, therefore, an arrearage existed pursuant to that judgment.

Defendant appeals, contending that the trial court erred in failing to honor and give full faith and credit to the Michigan support order which prospectively modified his support obligations.

BACKGROUND

Plaintiff and defendant were married on May 12, 1973, in Berrien County, Michigan. On September 8, 1981, they were divorced in Illinois, their State of residence at that time. Pursuant to the terms of that dissolution judgment, defendant was directed to pay plaintiff 35% of his gross income for the support of their three minor children. On September 23, 1981, defendant was directed to pay plaintiff $154.43 per week for child support. Defendant did not file a direct appeal from that order. Subsequently, defendant left his job in Illinois, moved to Michigan and fell behind in child-support payments. In July 1982, plaintiff filed the aforesaid URESA petition in Cook County to enforce the 1981 support order.

The State of Illinois (the initiating State) then forwarded that petition to the circuit court of Kalamazoo, Michigan (the responding State). On December 17, 1982, the Michigan court entered a prospective modified order of support which stated that defendant was unable to comply with his duty of support at that time because he was unemployed. Plaintiff did not appeal that order. After defendant became employed, he petitioned the court to decrease his support obligations. After a hearing on June 15, 1983, the circuit court of Berrien County, Michigan, entered a support order directing defendant to pay plaintiff in the future the sum of $18 per week for the support of each of the minor children of the parties. That order was approved by the prosecuting attorney.

On November 13, 1984, plaintiff filed in Illinois a petition against defendant which alleged that an arrearage in excess of $18,400 had accrued under the parties' Cook County marital-dissolution judgment. A hearing on that petition was held on August 14, 1985. The issue

presented to the trial court was whether the support order contained in the parties' Cook County dissolution judgment should be modified prospectively so as to be in conformance with the Michigan support order. The parties stipulated that, if the Michigan order did not supersede the Cook County dissolution judgment, defendant would be in arrears in the amount of $20,865.

On October 3, 1985, the trial court held that the Illinois marital-dissolution judgment had not been modified by the Michigan support order. The court ruled that URESA is primarily an enforcement tool and, consequently, it could not affect the Illinois judgment. The court further found that Michigan had no authority to modify the Illinois support order since it had no personal jurisdiction over plaintiff even though the prosecuting attorney had appeared on plaintiff's behalf at the June 15, 1983, hearing in Michigan.

As stated above, defendant contends that the trial court erred in failing to honor and give full faith and credit to the Michigan support order, which prospectively modified his support obligations.

OPINION

In 1950, in response to the increasing mobility of obligor-spouses, the National Conference on Uniform State Laws approved the Uniform Reciprocal Enforcement of Support Act. (Annot. 31 A.L.R.4th 347, 350-53 (1984).) At the time of the present matter, Michigan had adopted the basic 1950 version of URESA. In 1968, the National Conference and the American Bar Association approved the Revised Uniform Reciprocal Enforcement of Support Act. (Annot. 31 A.L.R.4th 351 (1984).) In 1969, the Illinois legislature adopted the basic 1968 version of the revised URESA.

In Michigan, URESA provides a means by which out-of-State dependents or their representatives may seek to obtain or enforce court-ordered child support. (*San Joaquin County, California v. Dewey* (1981), 105 Mich. App. 122, 127, 306 N.W.2d 418, 420.) The possible extent of such duties is defined in section 780.158 of the Michigan Compiled Laws Annotated. That section states:

> "Duties of support enforceable under this law are those imposed or imposable under the laws of any state where the alleged obligor was present during the period for which support is sought. The obligor is presumed to have been present in the responding state during the period for which support is sought until otherwise shown." (Mich. Comp. Laws Ann. sec. 780.158 (West 1982).)

Once a court in the responding State finds a duty of support, it has

the discretion to order the obligor to make such payments. (Mich. Comp. Laws Ann. sec. 780.164 (West 1982).) This necessary duty has been statutorily defined:

" 'Duty of Support' includes any duty of support imposed or imposable by law, or by any court order, decree or judgment, whether interlocutory or final, whether incidental to a proceeding for divorce, judicial (legal) separation, separate maintenance or otherwise." (Mich. Comp. Laws Ann. sec. 780.153(6) (West 1982).)

The existence of a duty does not, however, require the responding State court to establish the amount of support and then order an obligor to make payments to satisfy that duty of support. (See Mich. Comp. Laws Ann. sec. 780.164 (West 1982).) Such a decision is entrusted to the trial court's discretion. (*San Joaquin County, California v. Dewey* (1981), 105 Mich. App. 122, 129, 306 N.W.2d 418, 421.) Accordingly, a Michigan trial court, acting as the responding State court, has the power to set different amounts of support under its URESA statute with respect to foreign support orders. (*Fitzwater v. Fitzwater* (1980), 97 Mich. App. 92, 96, 294 N.W.2d 249, 251.) In addition, Michigan courts are under a duty to reevaluate support-payment schedules and may not blindly exercise the aforementioned authority. (*Whybra v. Gustafson* (1966), 2 Mich. App. 516, 517, 140 N.W.2d 760, 761.) Nonetheless, if such a modification is made, the court must first take into account the living situation of the child, the amount of care and support available to the child from the mother, and the father's ability to pay. 2 Mich. App. 516, 140 N.W.2d 760.

However, URESA does not grant *in personam* jurisdiction over a nonresident party not otherwise subject to the power of Michigan courts. Nor does it create new duties of support. (*Fitzwater v. Fitzwater* (1980), 97 Mich. App. 92, 294 N.W.2d 249.) Rather, its purpose is to provide by reciprocal legislation for the enforcement, across State lines, of duties of support already in existence. (97 Mich. App. 92, 294 N.W.2d 249.) Accordingly, where no personal jurisdiction over a party to a URESA action is possessed by the court of the responding State, that statute cannot be relied upon to grant additional powers to modify a foreign support order. See generally 97 Mich. App. 92, 294 N.W.2d 249.

■ Similarly, in Illinois the purpose of URESA is to improve and extend by reciprocal legislation the enforcement of duties of support. (Ill. Rev. Stat. 1983, ch. 40, par. 1201; *Super v. Armstrong* (1980), 83 Ill. App. 3d 1062, 1064, 404 N.E.2d 1008.) The Act is intended as a supplementary device to enforce support orders previ-

ously entered. (*Super v. Armstrong* (1980), 83 Ill. App. 3d 1062, 1064-65, 404 N.E.2d 1008.) In this State, a URESA proceeding is a separate, independent action to enforce support obligations. (*People ex rel. Oetjen v. Oetjen* (1980), 92 Ill. App. 3d 699, 703, 416 N.E.2d 278.) The remedies provided under the Act are in addition to and not in substitution for any other remedies. Ill. Rev. Stat. 1983, ch. 40, par. 1231.

■ The courts of this State are not bound to recognize subsequent modifications of child support where the responding State has retroactively modified a vested arrearage. (See *Coons v. Wilder* (1981), 93 Ill. App. 3d 127, 131, 416 N.E.2d 785.) Although vested arrearages may not be disturbed, either the obligor or the obligee may petition to prospectively modify the support payments. (See *Super v. Armstrong* (1980), 83 Ill. App. 3d 1062, 1063-65, 404 N.E.2d 1008.) Illinois courts will recognize another State's prospective modification of a child-support obligation only to the extent that the Illinois order is modifiable. (*Sullivan v. Sullivan* (1981), 98 Ill. App. 3d 928, 931-934, 424 N.E.2d 957.) As applied to child-support orders, a judgment of support may not be modified retroactively and may be modified prospectively only upon a demonstration of a change in circumstances. *Sullivan v. Sullivan* (1981), 98 Ill. App. 3d 928, 424 N.E.2d 957; see Ill. Rev. Stat. 1983, ch. 40, par. 510.

■ Before Illinois courts will given full faith and credit to a subsequent prospective modification by the responding court, the Illinois court must make three determinations. They are: (1) whether the modification was litigated upon the merits; (2) whether it is a final judgment; and (3) whether the modifying court had personal and subject matter jurisdiction over the parties and the controversy. (See generally *Milliken v. Meyer* (1940), 311 U.S. 457, 462-64, 85 L. Ed. 278, 282-84, 61 S. Ct. 339, 341-343.) If the responding court did not have the power to modify the Illinois support order, Illinois courts do not have to give it full faith and credit. *Coons v. Wilder* (1981), 93 Ill. App. 3d 127, 131, 416 N.E.2d 785.

■ Where a court has exceeded its jurisdiction in entering judgment, that judgment is void and may be impeached collaterally. (See *Oak Park National Bank v. Peoples Gas Light & Coke Co.* (1964), 46 Ill. App. 2d 385, 394-95, 197 N.E.2d 73.) A trial court exceeds its jurisdiction where it enters an order against a party over which it does not have *in personam* jurisdiction. (See generally *County Board of School Trustees v. Association of Franciscan Fathers* (1977), 49 Ill. App. 3d 686, 700, 364 N.E.2d 691.) A void judgment or order is subject to collateral attack at any time. Consequently, it may be im-

peached in any proceeding where a right is asserted by virtue of that judgment. *Reynolds v. Burns* (1960), 20 Ill. 2d 179, 192, 170 N.E.2d 122; Ill. Rev. Stat. 1983, ch. 110, par. 2—1401(f).

The principal authority cited by defendant in support of his position is *Sullivan v. Sullivan*. In that case, the parties were divorced in New York in 1968. Pursuant to the separation agreement entered into, the husband was to pay $655 per month for child support. Subsequent to the entry of the divorce decree, the wife moved to Illinois and the husband then moved to Ohio. In 1978, an Illinois court increased the father's support obligation to $1,000 per month. Apparently, both parties were present at that hearing in Illinois. In an attempt to collect on the increased support order, the wife then commenced proceedings under URESA in Illinois. The complaint was then forwarded to Ohio, the responding State. However, when the hearing regarding that complaint took place in Ohio, both the husband and wife were present. At the conclusion of that hearing, the Ohio URESA court lowered the husband's obligation to $600 per month. In 1980, the wife filed a petition for a rule to show cause in Illinois which alleged arrearages under the 1978 Illinois order. Nevertheless, after a hearing, the trial court ruled that the responding URESA court had jurisdiction to prospectively modify the prior Illinois support order. On appeal, that ruling was confirmed. In affirming that judgment this court stated:

> "We find no error in the circuit court's decision to recognize the Ohio order over the previous Illinois order. Following the 1978 Illinois order, Mary properly entered that order in Ohio one month later by means of an URESA complaint. *With both parties present*, the Ohio court concurred in the finding that Daryl was obligated to pay support but it fixed a different amount of prospective support from that set by the initiating court. The law is generally settled that, under URESA, a responding court may enter a new decree for a different amount of prospective child support from that of the initiating court. [Citations.] Specifically, the Ohio court prospectively reduced Daryl's obligation from $1,000 to $600 per month because, contrary to Illinois law, the State refused to recognize inflation and maturation as reasons for increasing support.
>
> We do note, however, that Ohio may well have denied the 1978 Illinois order full faith and credit. It is generally established that one State must recognize a sister State's judgment to the degree that it is nonmodifiable. [Citations.] The law is equally well settled that the second forum must apply to the

first forum's law to determine the extent of modification. [Citations.] Accordingly then, to determine the degree to which the 1978 Illinois degree [*sic*] was modifiable, the Ohio court should have referred to section 510 of the Illinois Marriage and Marriage Dissolution Act (Ill. Rev. Stat. 1977, ch. 40, par. 510). That section dictates that a judgment of maintenance or support may not be modified retroactively and may be modified prospectively only upon a showing of changed circumstances. Moreover, courts of Illinois have consistently held that those facts which were the basis of the original decree became *res judicata* and that changed circumstances justifying modification of support must occur since the date of the decree. [Citation.] In the case at bar, however, the Ohio court modified the Illinois decree within one or two months of the Illinois decree and based its ruling upon the same set of circumstances that the Illinois court had used and which had become *res judicata*. Furthermore, from our examination of the record, there was no indication of changed circumstances to justify the 1978 Ohio modification. Thus, although URESA may authorize a responding court to modify the initiating State's decree, the second forum must nonetheless give full faith and credit to the first judgment to the extent that it is nonmodifiable. By refusing to recognize our rules regarding modification, the Ohio court modified a judgment which was not subject to modification in Illinois." (Emphasis added.) *Sullivan v. Sullivan* (1981), 98 Ill. App. 3d 928, 931-932, 424 N.E.2d 957.

This court then held that it was required to give full faith and credit to Ohio's judgment even though the Ohio court may have failed to give the 1978 Illinois judgment full faith and credit. The court pointed out that any objections the wife had concerning the Ohio modification should have been directly appealed in Ohio and not collaterally attacked in Illinois. The court then stated:

"The United States Supreme Court has long held that 'the full faith and credit clause of the Constitution precludes any inquiry into the merits of the cause of action, the logic or consistency of the decision, or the validity of the legal principles on which the judgment is based.' (*Milliken v. Meyer* (1940), 311 U.S. 457, 461, 85 L. Ed. 278, 282-83, 61 S. Ct. 339, 342.)" 98 Ill. App. 3d 928, 932, 424 N.E.2d 957.

The plaintiff points out that the *Sullivan* opinion is factually distinguishable from the present matter since the wife in *Sullivan* was present in the URESA court when the alleged modification of support

took place. In the present situation, plaintiff remained in Illinois during the Michigan proceedings. Defendant maintains that, although the *Sullivan* decision does not clearly address whether the wife was, in fact, present during the modification proceedings, "said fact is inconsequential." Defendant further maintains that the decision in *Sullivan* did not indicate that it was based upon the wife's physical presence at the hearing in Ohio when the prospective modification took place.

However, after reading the *Sullivan* holding, we are of the opinion that such fact was crucial to the court's decision. As was outlined in the quoted material above, the *Sullivan* court pointed out specifically that the wife was present at the time the support payment was prospectively modified. It is evident that the court based its decision on the fact that the wife had voluntarily subjected herself to the jurisdiction of the responding court by appearing at the Ohio hearing. Our conclusion is further supported by the fact that the *Sullivan* court stated that the wife should have directly appealed the reduction in the support order in Ohio rather than have attempted a collateral attack in Illinois. It is apparent that the wife could have filed a direct appeal in the Ohio proceedings only if she had submitted herself to the jurisdiction of the Ohio court. We feel that this distinguishing feature of the *Sullivan* opinion is so material that *Sullivan* is not applicable to the present situation.

Defendant, citing *Ibach v. Ibach* (1979), 123 Ariz. 507, 600 P.2d 1370, argues that pursuant to URESA, the responding court has personal jurisdiction for a prospective modification of child support over an obligee who has initiated an action for overdue child-support payments. In that case, the obligee argued that section 32 of URESA mandated that the responding court lacked personal jurisdiction over her to modify the original order. The equivalent section in the Michigan Compiled Laws Annotated is section 780.172. That section states:

"Participation in any proceedings under this Act shall not confer upon any court jurisdiction of any of the parties thereto in any other proceedings." (Mich. Comp. Laws. Ann. sec. 780.172 (West 1982).)

In rejecting the obligee's argument, the Arizona court stated:

"However, Section 32 as generally interpreted, does not prohibit a court from deciding whether a plaintiff is entitled to support, and, if so, in what amount. It 'precludes counterclaims based merely on the theory that the plaintiff, by initiating the procedures ***, has submitted herself to the jurisdiction of the court of the responding state for other purposes.' [Citation.] Hence, when a person initiates an action for support under the

Uniform Act, the respondent cannot counterclaim for divorce [citation] or raise issues concerning 'child custody or visitation privileges or other matters commonly determined in domestic relation cases.' " (*Ibach v. Ibach* (1979), 123 Ariz. 507, 510, 600 P.2d 1370, 1373.)

However, the court then went on to state:

"The Colorado court had before it for consideration the petition of Ernestine Ibach for enforcement of the Arizona support obligation and Maxwell Ibach's motion to reduce or abate support. *The court heard testimony from both parties covering their present circumstances.*" (Emphasis added.) 123 Ariz. 507, 511, 600 P.2d 1370, 1374.

It is evident from the above-cited passage that the obligee was present in the responding court and testified as to her then present financial circumstances prior to the court's decision to reduce the amount of alimony which had been awarded to her in the initiating State. For this reason, we are of the opinion that *Ibach v. Ibach* also is not applicable to the present situation since it was established in the present matter that plaintiff was not in attendance at the hearing when the Michigan court made a prospective reduction in defendant's obligation to pay child support.

■ The Michigan court reduced the child-support award ordered by the Illinois court without hearing any testimony from plaintiff. As stated above, in Michigan a trial court must take into consideration evidence of the financial support available to the child from the mother prior to modifying any previous order of support. In Illinois, any change in a support order, made pursuant to section 510 of the Illinois Marriage and Dissolution of Marriage Act, must be based on "changed circumstances." (Ill. Rev. Stat. 1983, ch. 40, par. 510(a).) We believe that the Michigan court could not have accurately ascertained what the financial situation of the plaintiff was, at the time of the hearing, without her being present to testify as to that condition. Moreover, since plaintiff was not present at the Michigan hearing, we conclude that the Michigan court did not have *in personam* jurisdiction over the plaintiff for the purpose of reducing a support order previously issued in her favor by an Illinois court. Accordingly, the circuit court acted properly when it refused to give full faith and credit to the Michigan order reducing the amount of defendant's support obligation. In addition, we must point out that defendant never filed a direct appeal from the Illinois order of support. It is apparent that if defendant felt the amount of support ordered was incorrect, such a step could have been taken before he moved to Michigan.

Nor do we believe that plaintiff was adequately represented by the prosecuting attorney for Berrien County, Michigan. It is evident that that attorney had no personal knowledge of plaintiff's financial condition at the time of the hearing. Consequently, such representation could not have adequately protected plaintiff's interests. Therefore, this contention is also without merit.

Defendant next contends that, even if the courts of this State are not compelled under the full faith and credit clause to recognize the Michigan court's prospective modification of child support, this court should recognize that modification based upon the principles of comity. In support of that contention, defendant cites *Light v. Light* (1957), 12 Ill. 2d 502, 147 N.E.2d 34. However, our examination of the *Light* opinion reveals that it was primarily based on the decision to give a · Missouri divorce decree full faith and credit as to future payments of alimony. In reaching that decision, our supreme court only peripherally referred to the principles of comity in order to compare those to the principles of the full faith and credit clause. (12 Ill. 2d 502, 510-511, 147 N.E.2d 34.) Moreover, the *Light* opinion involves an attempt by the former wife to register the Missouri divorce decree in Illinois pursuant to the Uniform Enforcement of Foreign Judgments Act. (12 Ill. 2d 502, 504-05, 147 N.E.2d 34.) That case did not involve an application of URESA. Furthermore, that opinion strongly indicates that the Missouri court had personal jurisdiction over both spouses prior to awarding a divorce to the wife. Since plaintiff never had any opportunity to present evidence in the Michigan hearing which resulted in the reduction of defendant's child-support obligation, we will not recognize the Michigan reduction order on the basis of comity.

■ Defendant also contends that it would be inequitable to require him to return to Illinois to petition for a modification of his support obligation. Defendant maintains that such a requirement fails to account for his deteriorating financial condition and also would undermine the purpose of URESA.

However, the record on appeal does not contain anything which would indicate the defendant's relinquishment of his job in Illinois and his subsequent move to Michigan was anything but voluntary. As stated above, if defendant did not agree with the support order issued by the Illinois court he could have filed a direct appeal in this jurisdiction at that time. This he chose not to do. Consequently, we do not feel that any principle of equity will be violated by requiring respondent to return to Illinois if he wants to attempt a modification of the support order previously entered by the circuit court on the basis that his circumstances have changed.

For the reasons stated above, the order of the circuit court, which refused to recognize the Michigan court's order prospectively reducing defendant's support obligation, is affirmed.

Judgment affirmed.

JOHNSON, J., concurs.

PRESIDING JUSTICE McMORROW, dissenting:
Because I conclude that the Michigan court's order reducing Robert Gifford's child-support payments should be given full faith and credit by the Illinois courts, I respectfully dissent from the majority's decision. In my view, the majority's determination that the Michigan URESA[1] order is not entitled to full faith and credit misconstrues pertinent case law interpreting URESA and relies upon facts not shown in the record.

Inasmuch as the majority has not addressed Janice's argument that the antinullification provision of URESA (9A U.L.A. 747, 794 (1958) (URESA section 30); see also 9A U.L.A. 647, 734 (1968) (URESA section 31)) affords a basis for affirmance, this dissent also will not consider that contention.

ANALYSIS
The majority reasons that the Michigan support order is not entitled to full faith and credit because "the Michigan court could not have accurately ascertained what the financial situation of [Janice Gifford] was, at the time of the [Michigan] hearing, without her being present to testify as to that condition." (152 Ill. App. 3d 422, 431.) The majority further determines that since Janice "was not present at the Michigan hearing * * * the Michigan court did not have *in personam* jurisdiction over [Janice] for the purpose of reducing a support order previously issued in her favor by an Illinois court." 152 Ill. App. 3d 422, 431.

In other words, the majority holds that an obligee spouse represented by counsel in the responding-State proceedings can avoid the *in personam* jurisdiction of the responding State simply by refusing or failing to be physically present in the responding State when the court of that forum holds a hearing with respect to the obligor

---
[1]Uniform Reciprocal Enforcement of Support Act (URESA) (9A U.L.A. 747 *et seq.* (1958)), revised by the Revised Uniform Reciprocal Enforcement of Support Act (9A U.L.A. 647 *et seq.* (1968 & Supp. 1985)).

spouse's prospective child-support obligation. On this basis alone, the majority concludes that the Michigan court's URESA order reducing Robert's prospective support obligation is not entitled to full faith and credit.

In the cases upon which the majority relies to conclude that the Michigan URESA court here lacked jurisdiction over Janice (*Sullivan v. Sullivan* (1981), 98 Ill. App. 3d 928, 424 N.E.2d 957, *appeal denied* (1981), 85 Ill. 2d 582; *Ibach v. Ibach* (1979), 123 Ariz. 507, 600 P.2d 1370), the courts simply noted in passing that the obligee spouse participated in the responding court's proceedings. Although it has been recognized that full faith and credit will not be accorded to the order of a sister State where the party against whom enforcement is sought had no meaningful notice or opportunity to appear (see, *e.g.*, *Sevinson v. Sevinson* (Del. Sup. 1978), 396 A.2d 178; *Overman v. Overman* (Mo. App. 1974), 514 S.W.2d 625; see generally *Kulko v. Superior Court of California* (1978), 436 U.S. 84, 56 L. Ed. 2d 132, 98 S. Ct. 1690; *Milliken v. Meyer* (1940), 311 U.S. 457, 85 L. Ed. 278, 61 S. Ct. 339; Reitmayer, *Modification of Divorce Support Decrees Under RURESA: A Procedural and Substantive Quagmire,* 20 New England L. Rev. 425 (1984-85)), neither *Sullivan* nor *Ibach* states or implies the opposite rule, which the majority now creates, that an obligee spouse's mere failure to participate in the responding court's proceeding would deprive that court of *in personam* jurisdiction over the obligee spouse. Nor do those cases express or infer that the obligee spouse's failure to participate, in and of itself, would be sufficient to preclude giving full faith and credit to the responding States' orders. As a result, the majority relies upon case law that does not stand for or intend the legal proposition which the majority now enunciates.

In fact, analysis of *Ibach* and *Sullivan* demonstrates that they support Robert's position in the case at bar that the Michigan court's URESA reduction order is entitled to full faith and credit.

In *Ibach v. Ibach* (1979), 123 Ariz. 507, 600 P.2d 1370, for example, the obligee spouse claimed, as does Janice in the instant appeal, that the responding State "lacked jurisdiction over her" for purposes of reducing the obligor spouse's prospective child support. (123 Ariz. 507, 510, 600 P.2d 1370, 1373.) The obligee spouse relied upon the section of URESA which states, "Participation in any proceeding under this act does not confer jurisdiction upon any court over any of the parties thereto in any other proceeding." (9A U.L.A. 747, 794 (1958) (URESA section 31); see also 9A U.L.A. 647, 736 (1968) (URESA section 32).) The *Ibach* court held that this section did not deprive the responding court of jurisdiction over the obligee spouse to

reduce the obligor spouse's prospective child-support obligation. It reasoned that the provision " 'precludes counterclaims based merely on the theory that the plaintiff, by initiating the procedure ***, has submitted herself to the jurisdiction of the court of the responding state for other purposes[ ]' [(*Thibadeau v. Thibadeau* (1974), 133 Ga. App. 154, 156, 210 S.E.2d 340, 343)] [such that] *** the respondent cannot counterclaim for divorce[ ] [(*Blois v. Blois* (Fla. App. 1962), 138 So. 2d 373)] or raise issues concerning 'child custody or visitation privileges or other matters commonly determined in domestic relation cases' [(*Pifer v. Pifer* (1976), 31 N.C. App. 486, 489, 229 S.E.2d 700,703)]." (*Ibach v. Ibach* (1979), 123 Ariz. 507, 510, 600 P.2d 1370, 1373.) The court concluded that the section did not "prohibit a court from deciding whether a plaintiff is entitled to support, and, if so, in what amount." (123 Ariz. 507, 510, 600 P.2d 1370, 1373.) On this basis, the court rejected the obligee spouse's contention that the responding court lacked personal jurisdiction over her when it reduced her husband's prospective support obligations.

Thus, *Ibach* demonstrates that the Michigan URESA court did not "lack personal jurisdiction" over Janice for purposes of reduction in Robert's prospective support obligation. The majority's attempt to distinguish *Ibach* on the theory that the wife appeared at the proceeding in *Ibach* while Janice did not testify at the Michigan proceeding in the instant cause is without merit. The relevant inquiry is whether Janice was provided notice and an opportunity to be heard, not whether she simply neglected to avail herself of such an opportunity. There is nothing in the record here to indicate, or even imply, that Janice was not given notice that the Michigan court would consider whether Robert's support obligations should be reduced or that Janice was not provided an opportunity to testify at the Michigan court's hearing.

*Sullivan v. Sullivan* (1981), 98 Ill. App. 3d 928, 424 N.E.2d 957, *appeal denied* (1981), 85 Ill. 2d 582, also clearly demonstrates that the Michigan URESA reduction order at issue here should be given full faith and credit in Illinois. In *Sullivan*, the wife filed an URESA petition in Illinois to recover past due support which her husband owed under an Illinois judgment. Upon certification and forwarding of the action from Illinois to the county wherein her husband resided in Ohio, the Ohio court found that the husband owed a certain amount in support arrearages under the Illinois order. The Ohio court also concluded that the husband's prospective support obligations should be reduced, and entered an order fixing the husband's support duty at a sum lower than that set by the Illinois judgment.

The wife then filed an action in Illinois requesting that the court

find the husband in contempt for failing to comply with the Illinois order. The Illinois trial court accorded full faith and credit to the Ohio URESA order reducing the amount of the husband's prospective support. The appellate court affirmed the trial court's ruling and gave recognition to the authority of the Ohio court to reduce the husband's prospective support obligation. After reciting the well-established principles of according full faith and credit to sister State judgments, the court stated, "Thus, although URESA may authorize a responding court to modify the initiating State's decree, the second forum must nonetheless give full faith and credit to the first judgment to the extent that it is nonmodifiable." (*Sullivan v. Sullivan* (1981), 98 Ill. App. 3d 928, 932, 424 N.E.2d 957, 960.) Based upon this analysis and the recognized modifiability of prospective child support upon a showing of changed circumstances, the *Sullivan* court determined that the Ohio decree was entitled to full faith and credit. The court in *Sullivan* noted that "[a]ny objections [the wife] had concerning the Ohio modification should have been directly appealed in Ohio and not collaterally attacked as she attempts to do here." (98 Ill. App. 3d 928, 933, 424 N.E.2d 957, 960.) The court in *Sullivan* also deemed it significant that the Ohio order had not rendered void the Illinois order with respect to any child support past due thereunder at the time the Ohio order was entered.

In the instant case, as in *Sullivan*, only prospective support payments were modified by the Michigan court. *Sullivan* is not inapposite to the case at bar, since the record here shows that Janice gave no indication that she did not receive notice of the proceeding or that she was not given an opportunity to appear in the Michigan proceedings.

Parenthetically, I note that the majority's ruling is founded on erroneous characterizations of the record in the case at bar. For example, there is nothing in the record to support the majority's statement that Janice was not adequately represented by the prosecuting attorney for Berrien County, Michigan, or to warrant the majority's view that "[i]t is evident that that attorney had no personal knowledge of [Janice's] financial condition at the time of the hearing."[2] (152 Ill. App. 3d 422, 432.) Nor is there anything in the record to suggest that the Michigan court did not properly apply Illinois law when it decided to reduce Robert's prospective child-support obligations. Indeed,

---

[2]In the case at bar, the trial court ordered that Robert's support arrearages of almost $20,000 be paid directly to the Illinois Department of Public Aid. Consequently, it appears that Janice was receiving public aid from the State of Illinois while her URESA action was pending before and disposed of by the Michigan court.

both Illinois and Michigan law recognize that a voluntary, good faith change or loss of employment is ground for reduction in prospective child support. See, *e.g., In re Marriage of Kowski* (1984), 123 Ill. App. 3d 811, 463 N.E.2d 840; *Rutledge v. Rutledge* (1980), 96 Mich. App. 621, 293 N.W.2d 651.

The majority also observes that "the record on appeal does not contain anything which would indicate that [Robert's] relinquishment of his job in Illinois and his subsequent move to Michigan was anything but voluntary. *** [I]f [Robert] did not agree with the support order issued by the Illinois court he could have filed a direct appeal in this jurisdiction at that time. This he chose not to do. Consequently, we do not feel that any principle of equity will be violated by requiring [Robert] to return to Illinois if he wants to attempt a modification of the support order previously entered by the circuit court on the basis that his circumstances have changed." (152 Ill. App. 3d 422, 432.) However, there is no indication in the record that Robert moved to Michigan and did not find gainful employment there because he wanted to avoid his Illinois support obligations. On the contrary, the parties agree that, as his salary increased, Robert voluntarily increased his support payments beyond the amount required in the Michigan order.

The majority concludes that although she was represented by counsel in the Michigan proceedings, Janice's failure to appear is sufficient to deprive the Michigan URESA court of personal jurisdiction over her, deny full faith and credit to the Michigan URESA order, and characterize Robert as the errant husband who fled Illinois simply to avoid his support obligations. In my opinion, this conclusion is erroneous in that it is based upon an incorrect application of the law and an incorrect analysis of the facts.

CONCLUSION

It is significant to note that the majority of jurisdictions which have adopted URESA now recognize that a responding State may not only enforce the originating State's support order, but may also modify that support order by a prospective increase or reduction in support obligations. (See, *e.g., Koon v. Boulder County Department, of Social Services* (Fla. 1986), 494 So. 2d 1126 (and cases cited therein); see also *Sullivan v. Sullivan* (1981), 98 Ill. App. 3d 928, 424 N.E.2d 957; *cf. Kulko v. Superior Court of California* (1978), 436 U.S. 84, 100, 56 L. Ed. 2d 132, 146, 98 S. Ct. 1690, 1701 (approved, in *dicta,* utilization of URESA to facilitate claim for additional support, as well as to collect owed support payments).) To

refuse to give full faith and credit to the Michigan support order at issue here, on no more than the mere ground that Janice failed to testify at the Michigan court's hearing, will serve only to undermine these precedents and to eviscerate URESA's goal of "provid[ing] a simple two-state procedure by which the obligor's *duty* to support an obligee residing in another state may be enforced expeditiously [for example, through an increase or reduction in the amount of prospective support] and with a minimum of expense to the obligee. [Citation.]" (Emphasis in original.) *Koon v. Boulder County Department of Social Services* (Fla. 1986), 494 So. 2d 1126, 1129; see also *Light v. Light* (1958), 12 Ill. 2d 502, 510, 147 N.E.2d 34.

In my opinion, the majority decision establishes a harsh and inequitable rule. The court should not award an unjustifiable windfall to an obligee spouse who first sought out and received the benefits of the responding court's protection in order to recover past due support in an URESA action but failed to appear at the responding court's URESA hearing to reduce the obligor spouse's prospective support obligation. Nor should the court impose a severe hardship and unwarranted penalty upon an obligee spouse who, in good-faith reliance upon the responding court's URESA reduction order, pays the amount of support determined by a court which conducted a hearing on his financial circumstances and applied Illinois law in determining if a reduction in support was appropriate.

For these reasons, I respectfully dissent.