THE PEOPLE *ex rel.* PATRICIA ANN OETJEN, Plaintiff-Appellee, *v.*
KENNETH A. OETJEN, Defendant-Appellant.

First District (3rd Division)    No. 80-802

Opinion filed September 30, 1980.—Modified on denial of rehearing February 11, 1981.

Alan M. Goldberg, of Rosenfeld, Hafron & Shapiro, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Paul P. Biebel, Jr., Stuart D. Gordon, and James G. Tansey, Assistant State's Attorneys, of counsel), for appellee.

Mr. JUSTICE McNAMARA delivered the opinion of the court:

This appeal arises from an order of the circuit court of Cook County declining to terminate child-support obligations ordered under the Revised Uniform Reciprocal Enforcement of Support Act (URESA) (Ill. Rev. Stat. 1975, ch. 68, pars. 101 through 142 (current version at Ill. Rev. Stat. 1979, ch. 40, pars. 1201 through 1242)).

Petitioner, Patricia A. Oetjen, and respondent, Kenneth A. Oetjen, were married in 1972 in Denver, Colorado. The parties had two children: Michael, born in 1973, and Michele, born in 1976. On May 24, 1976, while the parties were still married, petitioner filed a petition under the

Colorado URESA seeking $200 per month child support from respondent. The petition recited that respondent was residing in Illinois and that petitioner was receiving public assistance. In accordance with the provisions of URESA, the petition and certification were forwarded to Illinois, the responding State, and docketed in the circuit court of Cook County as case No. 76CO 2869 (hereinafter referred to as the "URESA court.") The case number is given to clarify subsequent events.

On September 15, 1976, prior to a hearing on the URESA petition, petitioner obtained a judgment for dissolution of the marriage in Colorado. Petitioner was granted custody of the children. Jurisdiction over visitation and property rights was reserved until the Colorado court acquired personal jurisdiction over respondent.

Meanwhile, on June 2, 1976, respondent had filed a complaint for divorce in Cook County (hereinafter referred to as the divorce court) in which he sought custody of the children. Petitioner was personally served but failed to appear, and on September 17, 1976, the court entered a judgment of divorce in case No. 76D 12802. By its terms, child custody was reserved for future consideration and respondent was directed to pay petitioner $35 per week as support for the children.

On December 29, 1976, following a hearing on the pending URESA petition, the URESA court found that respondent was responsible for the support of two minor children and that he was paying $35 per week under a divorce judgment. In conformity with the divorce judgment, the URESA court ordered him to pay $35 per week in child support, effective January 15, 1977.

Thereafter, petitioner sought to vacate the Illinois divorce judgment, maintaining that it was null and void because the marriage had already been dissolved by the Colorado judgment. In a separate pleading petitioner sought to enroll the Colorado judgment in Illinois. The latter motion contained an allegation that on February 6, 1977, Michael was sent to visit respondent and that respondent had refused to relinquish custody of Michael. Petitioner requested that respondent be ordered to return custody of Michael. In opposition, respondent filed a motion for custody of Michael claiming that in February 1977, petitioner brought Michael to Chicago and demanded that respondent take custody of him and that, since then, respondent has had exclusive care of Michael. On March 11, 1977, the court vacated the Illinois divorce judgment. The court also enrolled the Colorado judgment, awarded custody of Michael to petitioner, and granted visitation to respondent. In addition, the order directed respondent to pay $35 per week as child support and recited "that this payment for child support shall be in lieu of the present order for child support entered in Case No. 76CO 2859 [sic]." This order was entered in case No. 77CH 1354.

Several months later, respondent filed a petition in the divorce action seeking an abatement of the child-support order. The basis of the request was that petitioner refused to allow him summer visitation with the children and would not advise him of where she and the children were living. Petitioner was given notice of the hearing but did not appear. On September 12, 1977, the divorce court entered an order vacating and abating respondent's child-support obligation until further order of court.

Thereafter, on May 31, 1978, the State of Illinois, on behalf of petitioner, filed a petition for a rule to show cause in the URESA court alleging that respondent failed to comply with the URESA child-support order and that, as of May 17, 1978, there was an arrearage of $2,450. In a motion to dismiss, respondent alleged that the 1977 abatement order barred petitioner's claim. Petitioner's response stated that the abatement order related only to the Illinois divorce action and was irrelevant to the URESA proceeding. On November 8, 1978, the court denied respondent's motion to dismiss; ordered respondent to resume paying $35 per week child support; and directed Colorado, the initiating State, to furnish petitioner's address and arrange visitation. Respondent was given a credit of $420 paid to petitioner and liquidation of the arrearage was held in abeyance. The petitioning jurisdiction informed respondent of petitioner's address. On May 30, 1979, respondent paid $280 in open court, and thereafter the court found that he was making regular child-support payments.

Later, on September 19, 1979, respondent filed a motion in the URESA action to terminate all child-support obligations on the ground that he had not been permitted visitation and that the September 12, 1977, order relieved him of his duty to pay child support. Petitioner's answer denied that the 1977 order affected the prior URESA order and maintained that, under Illinois law, failure to comply with visitation provisions does not suspend the obligation to provide child support. On February 21, 1980, the court denied respondent's motion to terminate child-support obligations and denied the State's motion for a rule to show cause against respondent. Respondent appeals from the denial of his motion to terminate child-support payments.

On appeal respondent first contends that the order of March 11, 1977, providing that respondent pay $35 per week "in lieu of" the prior URESA order bars the URESA court from collecting child support from respondent.

The purpose of URESA is to secure support for dependent children from persons legally responsible for their support. (*People ex rel. Winger v. Young* (1979), 78 Ill. App. 3d 512, 397 N.E.2d 253; *Allain v. Allain* (1960), 24 Ill. App. 2d 400, 164 N.E.2d 611.) Section 24 of the Act provides that if the responding court finds a duty of support, it may order the

obligor to furnish support. (Ill. Rev. Stat. 1979, ch. 40, par. 1224.) Duties of support are those imposed under the laws of any State in which the obligor was present for the period during which support is sought. Ill. Rev. Stat. 1979, ch. 40, par. 1207.

■■ The URESA proceeding is a separate, independent action to enforce support obligations, and remedies provided under the Act are "in addition to and not in substitution for any other remedies." (Ill. Rev. Stat. 1979, ch. 40, par. 1203; *County of San Diego v. Elavsky* (1979), 58 Ohio St.2d 81, 388 N.E.2d 1229.) Section 31 of URESA reads, in relevant part:

> "A support order made by a court of this State pursuant to this Act does not nullify and is not nullified by a support order made by a court of this State pursuant to any other law * * * regardless of priority of issuance, unless otherwise specifically provided by the court." (Ill. Rev. Stat. 1979, ch. 40, par. 1231.)

Accordingly, once an URESA support order is established, it is not automatically modified or nullified by a subsequent support order in the divorce action unless the divorce court so specifies. *County of San Diego v. Elavsky*; see also *Banton v. Mathers* (1974), 159 Ind. App. 634, 309 N.E.2d 167; *Campbell v. Jenne* (1977), 172 Mont. 219, 563 P.2d 574.

■■ Having reviewed the record, we conclude that the URESA order was not nullified by the order of March 11, 1977. Respondent, the obligor, was residing in Illinois during the time support was sought. Under the terms of the Illinois divorce judgment entered on September 17, 1976, respondent was directed to pay child support of $35 per week. On December 29, 1976, the court hearing the URESA petition noted the support entered in the divorce action and, in conformity with that order, directed respondent to pay $35 per week child support. On March 11, 1977, in a proceeding separate from the post-judgment or URESA actions, the circuit court enrolled the Colorado judgment for dissolution of marriage and ordered respondent to pay $35 per week child support. The court recited that such payment shall be "in lieu of the present order for child support entered in [the URESA case]." We are not persuaded that the terms "in lieu of" specifically nullified the prior URESA order. Rather, the language simply meant that respondent would not be required to pay twice on the same order of support. Consequently, the order of March 11, 1977, does not preclude the URESA court from enforcing respondent's support obligations.

Respondent next argues that the order entered in the divorce action of September 12, 1977, which abated his support duties, is binding upon the URESA court. He urges that the abatement order entered by the circuit court of Cook County in the post-judgment divorce action defines his support obligation under Illinois law, and that based upon that order,

he has no further duty of support. Petitioner counters that a divorce court order does not preclude a person from proceeding under the provisions of URESA.

■■ Although the record does not contain a transcript of the post-judgment divorce action, the order vacating the child support obligation was apparently based upon respondent's representation that he was deprived of visitation rights by petitioner. The State argues, on behalf of petitioner, that lack of visitation is no defense to URESA proceedings for child support. The State points out that under URESA and Illinois law, the violation of visitation terms does not suspend or excuse the other parent's failure to comply with child-support obligations. (Ill. Rev. Stat. 1979, ch. 40, par. 1223; see *People ex rel. Winger v. Young.*) Relief from an objectionable divorce order, however, should be sought through appeal or modification, not through means of a URESA proceeding. (See *State ex rel. Arvayo v. Guerrero* (1973), 21 Ariz. App. 173, 517 P.2d 526.) Here the post-judgment order suspending respondent's support obligations was not appealed and is not before us on review. Rather, we are asked to determine whether the abatement order entered by the circuit court in the divorce action has an effect upon the URESA proceeding to terminate child support.

This issue has been considered by other jurisdictions having similar or identical URESA provisions. In *State ex rel. Arvayo v. Guerrero*, the divorce judgment ordered the father to pay child support. Thereafter the mother initiated URESA proceedings and obtained a URESA support order. Following an order to show cause regarding support in the URESA proceeding, the divorce court found that the mother had wilfully failed to comply with the visitation provisions of the divorce judgment and terminated child-support payments until the mother agreed to honor visitation orders. This termination order was not appealed. The trial court allowed the father's motion to dismiss a subsequent URESA complaint based upon the order relieving him of his duty to support. On appeal the court upheld the dismissal, reasoning that URESA is a means to enforce a duty of support and that the duty of support was circumscribed by the order in the divorce action terminating child support payments. Without such duty of support imposed upon the father, the mother had no right to a remedy under URESA. We do not accept petitioner's suggestion that *Arvayo* is distinguishable from the present case because the record before us does not reflect that she was represented by counsel at the hearing or that she was served with a rule to show cause.

Similarly, in *Ray v. Pentlicki* (Fla. App. 1979), 375 So. 2d 875, after a judgment of dissolution ordered the father to pay child support URESA proceedings were instituted to enforce the support obligation. In the

URESA action, an order was entered directing the father to pay child support but providing that the disbursement be withheld until consent to visitation was given. Later, an order was entered in the dissolution action suspending the child support payments required by the judgment of dissolution. The father then filed a motion in the URESA proceeding, reciting the post-judgment order and asking for suspension of the child-support order entered in the earlier URESA proceeding. The trial court denied the father's motion. The reviewing court reversed, reasoning that URESA creates no duty of support, but simply provides a means to enforce a duty of support as it may exist under the law of the responding State. The court held that the duty of support enforceable under URESA was circumscribed by the termination order entered in the dissolution proceedings.

In *Moffat v. Moffat* (1980), 27 Cal. 3d 645, 612 P.2d 967, 165 Cal. Rptr. 877, a judgment of dissolution directed the noncustodial parent, the father, to pay child support. Following the mother's wilful denial of the father's visitation rights, the divorce court found the mother in contempt and excused the father from further child-support payments until the mother complied with a visitation order. Thereafter, the mother, still refusing to honor the visitation order, moved to another State, where she received public assistance and filed a petition under URESA to compel child-support payments. The court in the URESA proceeding ordered the father to pay support. The reviewing court reversed, finding that the contempt order suspending child support was conclusive of the father's duty of support in the URESA proceeding. In so holding, the court emphasized that URESA "was enacted for the purpose of enforcing *existing* duties of support against persons presently *legally liable* for such support; it cannot create new support obligations." (27 Cal. 3d 645, ___, 612 P.2d 967, 975, 165 Cal. Rptr. 877, 885.) The court determined that the order terminating child support based upon the violation of a visitation order, although erroneous under the State's law, was not void, and that the father was entitled to rely on the order.

■■ The *Arvayo, Ray,* and *Moffat* cases are factually similar to the present situation. Here, the original Illinois divorce judgment imposed a duty of support upon respondent. In the subsequent URESA proceeding initiated by petitioner, the URESA court entered a support order in conformity with the divorce judgment. Thereafter, on September 12, 1977, the divorce court abated respondent's support obligation. Relying on this order, respondent sought to terminate the previous URESA support order. We note that URESA, as a uniform act, is to be "so construed as to effectuate its general purpose to make uniform the law of those states which enact it." (Ill. Rev. Stat. 1979, ch. 40, par. 1241.) Consistent with

*Arvayo, Ray,* and *Moffat,* we find that the abatement order circumscribed respondent's duty of support under URESA, and thus the URESA court should have allowed his motion to terminate.

We believe that such result is in accord with Illinois decisions construing URESA's provisions. Recently, in *Super v. Armstrong* (1980), 83 Ill. App. 3d 1062, 1064-65, 404 N.E.2d 1008, this court reasoned that URESA "is intended as a supplementary device to enforce support orders previously entered and is not designed to serve as an independent basis for the imposition or termination of support orders." Moreover, in *People ex rel. Kerl v. Kerl* (1979), 75 Ill. App. 3d 347, 393 N.E.2d 1305, we noted that where an order is issued in another court before the URESA court has rendered its decision, the URESA court must conform its support order to the amount allowed, and reasoned that where the order in the other action terminates support altogether, a pending URESA petition must be dismissed. The logical extension of *Kerl* and *Armstrong* is that once a child-support obligation has been abated by a post-judgment order in the divorce action, there remains no duty of support which may be enforced through the remedies available under URESA. In such situation, a motion filed in the URESA court to terminate support should be granted.

Petitioner relies on *Allain v. Allain* (1960), 24 Ill. App. 2d 400, 164 N.E.2d 611, for the proposition that the URESA court has its own independent existence and that it is not estopped to proceed because of a previous order entered by a divorce court. *Allain* is distinguishable from the present case. There a Minnesota divorce judgment required the parent to pay $20 per month in child support and the URESA court in Illinois subsequently increased the amount to $50 per month. This court reasoned that the child-support provision in the Minnesota judgment did not preclude an Illinois court from granting relief under URESA. In that case, there was an existing duty of support. Here, at the time the motion to terminate was presented to the URESA court, respondent's duty of support had been abated.

■■ Petitioner also points out that, under section 31 of the Act, a URESA support order is not nullified by a support order entered under the former Illinois divorce act unless otherwise provided. (Ill. Rev. Stat. 1979, ch. 40, par. 1231.) This section means that a duty of support may be considered and determined in the URESA proceeding notwithstanding a previously entered support order, and that the URESA support order will stand even though another court subsequently issues a support order concerning the same duty of support. The provision contemplates that there may be a variance in the determination by separate courts of the same support obligation. (See *Ray v. Pentlicki.*) It is not clear, however, that an order of abatement can be considered a "support order" since the Act defines "support order" as "any judgment * * * or order of support in favor of an

obligee * * *." (Ill. Rev. Stat. 1979, ch. 40, par. 1202(n).) Section 31 thus appears to be inapplicable where a subsequent divorce court order vacates a support obligation altogether rather than merely modifies the amount owed.

Finally, it is urged that the State of Colorado, having furnished public assistance to petitioner, is the real party in interest and, further, that Colorado was not present at or involved in the proceeding abating respondent's support obligation. These facts, even if true, do not warrant a different outcome.

Section 8 of URESA provides:

"If a state * * * furnishes support to an individual obligee it has the same right to initiate a proceeding under this Act as the individual obligee for the purpose of securing reimbursement for support furnished and of obtaining continuing support." (Ill. Rev. Stat. 1979, ch. 40, par. 1208.)

That the Act permits the State of Colorado to stand in petitioner's place to secure reimbursement and obtain further support does not enlarge the expressed purpose of URESA beyond the enforcement of existing obligations. (*Chance v. LaPausky* (1979), 43 Md. App. 84, 402 A.2d 1329, but see *County of San Diego v. Elavsky*.) For the State of Colorado to have a remedy under URESA, there must be an imposed or imposable duty of support. Respondent's duty of support having been abated, the State of Colorado has no right to collect support which respondent has no obligation to pay. See *Chance v. LaPausky.*

We conclude that the URESA court erred in denying respondent's motion to terminate his future child-support obligations. Under Illinois law, however, past-due installments of child support constitute a vested right which is enforceable under URESA. (Ill. Rev. Stat. 1979, ch. 40, par. 1209; *Super v. Armstrong.*) Petitioner thus has a vested right in payments accruing prior to the order terminating respondent's support obligations. In her petition, petitioner set forth an amount alleged to be due and unpaid by respondent. The order appealed from held consideration of arrearages in abeyance. On remand, the trial court should conduct a hearing to determine the amount, if any, of child-support arrearages.

For the foregoing reasons, the order of the circuit court of Cook County denying respondent's motion to terminate child-support payments is reversed. The cause is remanded to the trial court for further proceedings consistent with this opinion.

Reversed and remanded.

McGILLICUDDY, P. J., and RIZZI, J., concur.