*In re* MARRIAGE OF SUSAN J. (TAYLOR) WETTSTEIN, Petitioner-Appellee, and FRANK JEFFREY TAYLOR, Respondent-Appellant.

Fourth District    No. 4—86—0685

Opinion filed September 17, 1987.—Rehearing denied October 15, 1987.

Lynch & Bloom, P.C., of Peoria (David M. Lynch and Cheryl A. Dunlavey, of counsel), for appellant.

Harrod Law Firm, P.C., of Eureka (Daniel M. Harrod, of counsel), for appellee.

JUSTICE KNECHT delivered the opinion of the court:
This dispute arises from an attempt by Susan J. Taylor Wettstein (Wettstein), to enforce the terms of a Cook County divorce judgment issued in 1970 and modified in 1971. On June 6, 1986, the circuit court of Woodford County granted her rule to show cause and petition

to modify the judgment. It ordered her former husband Frank Jeffrey Taylor (Taylor), to pay accrued arrearage under the divorce judgment, medical payments for two of the minor children, prospective child support, and Wettstein's attorney fees. The court rejected Taylor's contention it was bound by previous support orders entered by an Ohio court from 1974 through 1985 pursuant to Wettstein's petition under the Uniform Reciprocal Enforcement of Support Act (URESA) (Ill. Rev. Stat. 1973, ch. 68, pars. 101 through 142 (now Ill. Rev. Stat. 1985, ch. 40, pars. 1201 through 1242)). Taylor appeals, raising issues relating to full faith and credit, equitable estoppel, and whether the trial court's awards of child support and attorney fees represented an abuse of discretion. We affirm.

The parties were divorced in Cook County on August 4, 1970. They agreed Taylor would pay $460 per month for child support for the four minor children. That sum was reduced to $335 per month by order dated March 19, 1971.

On October 16, 1984, Wettstein filed a petition to enroll the Cook County divorce judgment in Woodford County. Taylor was served with summons in Montgomery County, Ohio, where he resided. The Woodford County circuit court established the Cook County divorce judgment and the March 19, 1971, order in Woodford County December 5, 1984.

Wettstein filed a petition for rule to show cause March 13, 1985, claiming an arrearage of $30,756.84 under the Cook County decree as modified. At that time two of the four children of the parties were still minors and lived with Wettstein: Laura, born October 30, 1967, and Amy, born June 1, 1969. A rule was ordered to issue on April 9, 1985.

In a motion to vacate the rule, Taylor argued he was not in arrears to the extent claimed. In support he submitted documents relating to a URESA action pursued by Wettstein beginning in 1974. These documents indicate on September 24, 1974, a hearing was held on the support obligation in the court of common pleas of Montgomery County, Ohio. Taylor appeared at this hearing. The court found Taylor owed a duty of support and ordered him to pay $70 per week for child support beginning October 8, 1974. Taylor was twice found in contempt for failure to pay. Following the first contempt finding on June 29, 1976, Taylor's weekly obligation was reduced to $50. On July 11, 1980, Taylor obtained an order of emancipation relating to James, the oldest child. His obligation was reduced to $37.50 per week. That amount was reduced to $25 weekly in February 1985, following entry of an emancipation order on Lisa, the second oldest child.

Wettstein filed a petition to modify the divorce decree September 27, 1985, in Woodford County circuit court. She sought an increase in support for the two remaining minor children, Laura and Amy. The alleged substantial change in circumstances was that Taylor had become employed as an attorney, and had paid less than $400 in child support in 1984. Wettstein requested an increase in child support payments plus attorney fees.

An amended petition for rule to show cause filed December 13, 1985, alleged Taylor failed to maintain medical and life insurance policies for the benefit of the minor children as required by the original decree. Wettstein also claimed Taylor failed to pay certain medical bills for treatment rendered to Lisa and Amy, and failed to pay Laura's college expenses as required by the original judgment.

In an order issued June 6, 1986, the trial judge ruled the intent of URESA was to enforce the support order of the initiating State. He noted that if Illinois was the responding State, the Illinois court would have to set support in the amount previously determined in the initiating State. The court concluded it was not bound to accept the support modifications entered by the Ohio court. It ordered Taylor to pay accrued support arrearage through October 1985 of $30,250.91. Taylor was ordered to pay $275 per month for the remaining minor child, Amy, beginning November 1985. The judge further ordered Taylor to reimburse Wettstein $578 for medical payments, and to pay $2,400 to Wettstein's attorney. Taylor's request for reconsideration was denied. This appeal followed.

Taylor contends the circuit court should have given full faith and credit to the Ohio orders reducing his support obligation. Wettstein asserts the trial court was correct in enforcing the original decree.

■■ ■ The primary purpose of URESA is to secure support for the dependent children of persons legally responsible for their support. (*Paredes v. Paredes* (1983), 118 Ill. App. 3d 27, 454 N.E.2d 1014.) The URESA proceeding is a separate, independent action to enforce support obligations, and the remedies provided under the Act are "in addition to and not in substitution for any other remedies." (Ill. Rev. Stat. 1985, ch. 40, par. 1203; *People ex rel. Oetjen v. Oetjen* (1980), 92 Ill. App. 3d 699, 416 N.E.2d 278.) URESA creates no duty of support but simply provides a means to enforce a duty of support as it may exist under the law of the responding State. *People ex rel. Gribbins v. Skopitz* (1985), 135 Ill. App. 3d 76, 481 N.E.2d 815.

Taylor bases his position primarily on *Sullivan v. Sullivan* (1981), 98 Ill. App. 3d 928, 424 N.E.2d 957. The Sullivans divorced in New York in 1968. The decree ordered the husband to pay child support.

The wife subsequently moved with the children to Illinois, and the husband moved to Ohio. The wife obtained an increase in support from an Illinois court in 1977. In a later URESA action initiated by the wife in 1979, the Ohio court reduced the husband's support obligation. The wife did not appeal. In an action initiated in 1980 in Illinois to enforce the earlier Illinois support order, the Illinois court rejected the wife's argument that the terms of the Ohio order did not control. The circuit court ruled the Ohio court had jurisdiction to modify the Illinois support order, and the Ohio order took precedence over the previous order issued in the divorce action. Since the husband made payments as required by the Ohio order, he was not in arrears.

The reviewing court affirmed. It noted that any objections concerning the Ohio modification should have been appealed directly in Ohio and not attacked collaterally in Illinois. The Ohio order was entitled to full faith and credit despite the fact the Ohio court failed to observe the same principle with respect to the previous Illinois judgment, since there was no evidence of changed circumstances as required for modification by Illinois law.

The opposite result was reached in *Coons v. Wilder* (1981), 93 Ill. App. 3d 127, 416 N.E.2d 785. The parties were divorced in Oregon in 1973. The husband was ordered to pay child support. In 1977 the wife, who had moved to Illinois, sought to enroll the Oregon judgment in Du Page County and recover past-due child support. The husband, who had moved to Florida, filed a cross-petition requesting termination of his child support obligation. The Du Page County circuit court enrolled the Oregon judgment and ruled the husband was in arrears in his child support payments. He paid the arrearage.

Two years later, during a hearing on the wife's petition for increased child support and the husband's petition to extinguish his child support obligation, the husband testified he had been paying $100 per month in child support pursuant to a URESA order imposed by a Florida court. Husband contended that since the wife filed an action for past-due support in Illinois but pursued URESA enforcement in Florida before the Illinois action was resolved, she should be bound by the URESA order. The appellate court rejected this argument. The court based its decision on section 30 of the Act, which reads in pertinent part:

> "A responding court shall not stay the proceeding or refuse a hearing under this Act because of any pending or prior action or proceeding for dissolution of marriage, declaration of invalidity of marriage, legal separation, habeas corpus, adoption, or custody in this or any other state. The court shall hold a hear-

ing and may issue a support order pendente lite. In aid thereof it may require the obligor to give a bond for the prompt prosecution of the pending proceeding. If the other action or proceeding is concluded before the hearing in the instant proceeding and the judgment therein provides for the support demanded in the petition being heard the court must conform its support order to the amount allowed in the other action or proceeding. Thereafter the court shall not stay enforcement of its support order because of the retention of jurisdiction for enforcement purposes by the court in the other action or proceeding." Ill. Rev. Stat. 1985, ch. 40, par. 1230.

The court characterized URESA as supplementary for the purpose of enforcing previously entered orders, not a means to terminate or modify child support. The court also noted Florida courts were forbidden under URESA from entering support enforcement orders superseding any previous order issued in a dissolution action. It concluded the Florida court had no subject-matter jurisdiction to modify the child support obligations under the Oregon judgment and ruled the Du Page County circuit court was not bound by that modification.

█ An Illinois court was not required to give full faith and credit to a Michigan judgment prospectively reducing child support in *In re Marriage of Gifford* (1987), 152 Ill. App. 3d 422, 427, 504 N.E.2d 812, 815. The court set forth a three-part test for determining whether the judgment was entitled to full faith and credit: (1) whether the modification was litigated on the merits; (2) whether it was a final judgment; and (3) whether the modifying court had personal and subject-matter jurisdiction over the parties and the controversy. 152 Ill. App. 3d 422, 427, 504 N.E.2d 812, 815.

Both Illinois and Ohio have adopted the 1968 version of URESA. Section 30 of the Act is identical to its Ohio counterpart. (Ohio Rev. Code Ann. sec. 3115.27 (Page 1980).) Section 31 of the Act (Ill. Rev. Stat. 1983, ch. 40, par. 1231) is also identical to section 3115.28 of the Ohio statute, which states in part:

"Any support order issued by a court of this state pursuant to [the Act] *** does not nullify and is not nullified by a support order made by a court of this state pursuant to any other law or by a support order made by a court of any other state pursuant to a substantially similar act or any other law, regardless of priority of issuance, unless otherwise specifically provided by the court. Amounts paid for a particular period pursuant to any support order made by the court of another state shall be credited against amounts accruing or accrued for the

same period under any support order made by the court of this state." Ohio Rev. Code Ann. sec. 3115.28, at 177 (Page 1980).

■ We conclude the litigation in Ohio was on the merits with regard to whether Taylor owed a duty of support, but it was not on the merits as to what the amount of the obligation was. The statute enables the responding court to establish a duty exists, but the antisupersession provisions of section 31 of the Act (Ill. Rev. Stat. 1983, ch. 40, par. 1231) and section 3115.28 of the Ohio statute (Ohio Rev. Code Ann. sec. 3115.28 (Page 1980)) make it equally clear an order entered by the Ohio court pursuant to URESA did not nullify the previous Illinois order. To conclude that it did contradicts the express language of the statute. We have recognized the derivative nature of URESA actions in *Illinois Department of Public Aid v. Peterson* (1987), 156 Ill. App. 3d 657. We hold sections 30 and 31 of the Act permit the Woodford County circuit court to enforce the terms of the decree. The first prong of the *Gifford* test was not met, and the Ohio judgment is not entitled to full faith and credit.

Although our decision as to the first element of the test disposes of the matter, we note the substantial amount of testimony and argument generated by Taylor's assertion the Ohio court had personal jurisdiction over Wettstein. Section 32 of URESA states "[p]articipation in any proceeding under this Act does not confer jurisdiction upon any court over any of the parties thereto in any other proceeding." (Ill. Rev. Stat. 1985, ch. 40, par. 1232; Ohio Rev. Code Ann. sec. 3115.29 (Page 1980).) This provision has been interpreted as barring collateral issues, such as counterclaims for fraud, conversion, and maintenance, in a URESA action. (*Paredes v. Paredes* (1983), 118 Ill. App. 3d 27, 454 N.E.2d 1014.) The Ohio court had personal jurisdiction over Wettstein for purposes of the URESA proceeding, wherein her interests were represented by the prosecuting attorney, but we express no opinion as to whether her presence or absence at the initial hearing would be determinative. When a noncustodial parent moves to another State and fails to pay support, URESA provides a means to enforce child support orders previously entered. Public policy and common sense suggest a parent, struggling to support a child or children, who uses URESA should not automatically be expected to travel to far distant, out-of-State locations to litigate child support that has already been determined. As a practical matter, to condition full faith and credit upon whether the obligee spouse appears at an out-of-State hearing renders the URESA purpose meaningless.

Since we find the Ohio judgment was not entitled to full faith and credit, we need not address Taylor's contention that Wettstein is equi-

tably estopped from denying the Ohio order modified the child support provisions of the Illinois judgment.

■■■ Taylor also challenges the prospective award of child support. Under section 510 of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1985, ch. 40, par. 510), modification of child support may be made only upon a showing of a substantial change in circumstances. When determining whether there is sufficient cause to modify, courts consider both the circumstances of the parents and the circumstances of the child. (*Swanson v. Swanson* (1977), 51 Ill. App. 3d 999, 367 N.E.2d 512; *In re Marriage of Kessler* (1982), 110 Ill. App. 3d 61, 441 N.E.2d 1221.) Changed conditions are necessary to warrant a change in support payments. (*In re Sharp* (1978), 65 Ill. App. 3d 945, 382 N.E.2d 1279.) If the threshold question of substantial change is met, the court, in determining the modification, considers the same factors it considered in formulating the original amount. (*Winter v. Winter* (1978), 69 Ill. App. 3d 359, 387 N.E.2d 695; *In re Marriage of Roth* (1981), 99 Ill. App. 3d 679, 426 N.E.2d 246.) The court is to consider all relevant factors, including:

"(1) [T]he financial resources of the child;

(2) the financial resources and needs of the custodial parent;

(3) the standard of living the child would have enjoyed had the marriage not been dissolved;

(4) the physical and emotional condition of the child, and his educational needs; and

(5) the financial resources and needs of the noncustodial parent or parents." (Ill. Rev. Stat. 1983, ch. 40, par. 505(a); *In re Marriage of Bussey* (1985), 108 Ill. 2d 286, 296, 483 N.E.2d 1229, 1233.)

The modification of child support payments lies within the sound discretion of the trial court and, absent abuse of discretion, will not be disturbed on appeal. *In re Marriage of Bussey* (1985), 108 Ill. 2d 286, 483 N.E.2d 1229; *Fedun v. Kuczek* (1987), 155 Ill. App. 3d 798, 508 N.E.2d 531.

■ Here, the trial court found a substantial change of circumstances occurred since the 1971 order. Three of the four children had attained the age of majority, the remaining minor child was older and expenses of her maintenance had increased. After hearing evidence of the expense and income of the parties, the judge reduced Taylor's obligation to $275 monthly for one minor child. The trial judge heard evidence relating to the financial resources of the parties and their expenses, including educational and insurance expenses for Amy that had been paid by Wettstein. No abuse of discretion occurred here.

562

■■ ■ Taylor's final contention challenges the award of attorney fees to Wettstein. Section 508(b) of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1983, ch. 40, par. 508(b)) provides the court shall award attorney fees to the custodial parent if it finds the failure to pay child support was without cause or justification. If the failure to pay is not wilful and wanton, it may deny fees and costs. *Elliott v. Elliott* (1985), 137 Ill. App. 3d 277, 484 N.E.2d 482.

The party seeking attorney fees must show financial inability to pay fees and financial ability of the other party to pay. (*In re Marriage of Hopkins* (1982), 106 Ill. App. 3d 135, 137, 435 N.E.2d 897, 899.) Allowance of attorney fees is within the sound discretion of the trial court and is not to be overturned absent clear abuse. *Hofmann v. Hofmann* (1983), 94 Ill. 2d 205, 229, 446 N.E.2d 499, 509.

There is no abuse of discretion here. The court heard testimony from the parties as to their financial circumstances. Each spouse submitted an affidavit of assets and liabilities. Counsel for Wettstein submitted an affidavit detailing hours worked in court and out of court.

■■ While it may not be entirely clear from the record Taylor has the ability to pay, we note Taylor did not furnish evidence of his income from January through March 1985, although he submitted for April through August 1985. Those monthly net figures ranged from $566.51 to $1,770.75 at the time of the hearing. Taylor had been admitted to the Ohio bar in 1984 and was engaged in the practice of law. Wettstein was working a maximum of 33 hours per week at a restaurant at an hourly wage of $2.01. She had not worked since December 1, 1985, and anticipated being off work for two months in order to recuperate from surgery.

Financial inability exists when payment of fees strip the person of his means of support and undermine his economic stability. (*In re Marriage of Smith* (1984), 128 Ill. App. 3d 1017, 471 N.E.2d 1008.) The evidence taken below was sufficient for the trial court to conclude Wettstein showed an inability to pay and Taylor's ability to do so. Accordingly, the decision of the circuit court is affirmed.

Affirmed.

GREEN and LUND, JJ., concur.