LINDA SUE MILLER, n/k/a Linda Sue Niehoff, Plaintiff-Appellee, v. JAMES RIGG MILLER, Defendant-Appellant.

Fourth District   No. 4—93—1105

Argued July 12, 1994.—Opinion filed December 2, 1994.

Paul E. Adami (argued), of Mohan, Alewelt, Prillaman & Adami, of Springfield, for appellant.

Gerald L. Timmerwilke (argued), of Lewis, Blickhan, Longlett & Timmerwilke, of Quincy, for appellee.

JUSTICE LUND delivered the opinion of the court:

Defendant appeals the denial of his motions to vacate a 1986 judgment for unpaid child support and maintenance and to dismiss the nonwage garnishment and citation to discover assets, and from entry of a new judgment for additional accrued child support. We affirm in part, reverse in part, and remand for a determination of those sums representing unpaid maintenance.

The parties were married in Quincy, Illinois, in 1967; two children were born of that marriage. At some point the parties separated and in October 1975, plaintiff filed a petition in the circuit court of Adams County seeking $50 per week in child support from the defendant under the Revised Uniform Reciprocal Enforcement of Support Act (URESA) (see Ill. Rev. Stat. 1975, ch. 68, par. 101 *et seq.*). The case was transferred to Arizona, where defendant was then living. In November 1975, the Superior Court of Graham County, Arizona (the URESA court), found the defendant liable for child support and entered an order providing for $100 per month in child support payable through the circuit court of Adams County.

One year later, plaintiff filed a complaint for divorce in the circuit court of Adams County, Illinois (the dissolution court), requesting entry of an order dissolving the marriage and directing defendant to pay reasonable child support and maintenance "as well as child support heretofore ordered to be paid in another action for which [defendant] is in arrears." Defendant was served with summons and

filed an answer but failed to appear for the final hearing. The judgment of dissolution entered in June 1977 awarded plaintiff child support of $50 per week, maintenance of $50 per week, and $800 attorney fees. That judgment was not appealed.

Also in June 1977, plaintiff filed a petition for an order to show cause in the Arizona URESA court, alleging an arrearage in the child support ordered in that case. The URESA court, while noting that plaintiff had been awarded child support of $50 per week and maintenance of $50 per week under the Illinois dissolution decree, entered a second child support order again providing for child support payments of $100 per month effective August 1977.

In July 1986, plaintiff filed a petition to show cause in the dissolution court alleging receipt of only $20 in support payments from defendant and requesting entry of judgment for the sums due and owing pursuant to the 1977 judgment of dissolution, together with current attorney fees. Notice of the hearing on the petition was sent by certified mail to defendant at his place of employment, Fuhs Auto Sales, in Gallup, New Mexico. The receipt was signed by Loren Fuhs, manager, who stated in an affidavit that it was his procedure to deliver certified mail to employees, that defendant was an employee at that time, and that he believed defendant had received the letter in accordance with the procedure. Defendant did not appear at the hearing on the petition held August 7, 1986, and the dissolution court entered judgment of $32,530, representing support arrearage and attorney fees provided for under the judgment of dissolution, and $250 in attorney fees incurred in bringing the petition to show cause. An order of withholding was mailed to defendant in care of Fuhs Auto Sales but it was returned with the handwritten message "return to sender, moved left no forwarding address." At a later hearing, a handwriting expert submitted an affidavit and report concluding the handwriting on the envelope was that of defendant.

On July 7, 1993, plaintiff filed another petition to show cause in the dissolution court, seeking revival of the 1986 judgment and arrearage for child support accruing since that date, together with an affidavit for nonwage garnishment directed to the Trust Department/Boatmen's Bank of Quincy as garnishee for funds held in a spendthrift trust for the benefit of defendant. Although a garnishment summons and citation to discover assets were served on the named garnishee, it was subsequently determined to have been misnomered, and on July 28 plaintiff filed an amended affidavit for nonwage garnishment directed to the Boatmen's Trust Company of Illinois as garnishee (Boatmen's).

On July 29, 1993, the scheduled date for the hearing on the peti-

tion to show cause, defendant made a special and limited appearance contesting the jurisdiction of the dissolution court based on an allegation that plaintiff had abandoned jurisdiction in Illinois by obtaining the initial 1975 URESA support order in Arizona. The dissolution court denied the motion contesting jurisdiction and, by agreement of counsel, ordered Boatmen's to retain the funds it held for the benefit of defendant.

Boatmen's was served with an amended citation to discover assets and an amended nonwage garnishment summons on August 10, 1993. Plaintiff filed a garnishment notice, including a certificate of mailing signed by plaintiff's counsel, certifying that within two days of service upon the garnishee a copy of the garnishment summons and notice had been mailed to defendant. Defendant thereafter filed motions to vacate the 1986 judgment, dismiss the garnishment and citation to discover assets, and dismiss the petition to show cause. Those motions were denied on October 7, 1993, and defendant filed a motion to reconsider.

On December 15, 1993, a hearing was held on defendant's motion to reconsider and plaintiff's petition to show cause on the child support arrearage accrued since entry of the 1986 judgment and for revival and enforcement of that judgment. The dissolution court denied defendant's motion to reconsider, found the defendant in contempt, and granted judgment for plaintiff on a new arrearage of $5,375 plus attorney fees and costs of $4,727.88. The court determined that $54,066.50 was currently due on the 1986 judgment, granted the citation and garnishment, and directed Boatmen's to turn over to plaintiff $54,066.50. The order also provided for defendant to purge himself of contempt by paying all sums due, $64,169.38, within 60 days.

Defendant appeals, alleging: (1) the trial court lacked jurisdiction to enter any support orders following entry of the 1975 URESA order; (2) he lacked sufficient notice of the 1986 proceeding and the 1993 nonwage garnishment; (3) the garnishment is invalid because the 1986 judgment was not revived within seven years; and (4) the spendthrift trust was immune from claims for support.

■ Defendant initially argues that because the Arizona URESA court was the first to enter a support order during the parties' marriage, and the Illinois divorce decree did not expressly modify the prior URESA order, section 31 of the Illinois URESA statute (see Ill. Rev. Stat. 1977, ch. 40, par. 1231) barred plaintiff from obtaining any order for support in Illinois. In the defendant's view, the Arizona court's action deprived the Illinois dissolution court of subject-matter jurisdiction to enter any support orders, making any support provi-

sions in the 1977 dissolution judgment void, together with the 1986 judgment and the 1993 judgment and garnishment based on that 1977 dissolution judgment. Defendant does not dispute that the Illinois dissolution court had personal jurisdiction over him when the 1977 divorce decree was entered.

We note initially that since no URESA support order was entered in Illinois, the Illinois URESA statute has no application to the 1977 support orders entered pursuant to the Illinois Marriage and Dissolution of Marriage Act (Act) (Ill. Rev. Stat. 1977, ch. 40, par. 101 *et seq.*). However, the language of section 12—1680 of Arizona's URESA statute states:

> "A support order made by a court of this state pursuant to this article does not nullify and is not nullified by *** a support order made by a court of any other state pursuant to a substantially similar act or any other law, regardless of priority of issuance. Amounts paid for a particular period pursuant to any support order made by the court of another state shall be credited against the amounts accruing or accrued for the same period under any support order made by the court of this state." (Ariz. Rev. Stat. Ann. § 12—1680, Historical and Statutory Notes, at 409-10 (1994).)

This same language was in effect in 1975 (see 1979 Ariz. Sess. Laws 285) and substantially parallels section 31 of the Illinois URESA statute (see Ill. Rev. Stat. 1975, ch. 68, par. 131).

Defendant's entire argument, while phrased in terms of an improper modification of the Arizona URESA order by the Illinois dissolution court for failure to reference the Arizona order (resulting in an alleged loss of jurisdiction in Illinois and the voiding of all subsequent orders of support), is in essence an argument that an Arizona URESA order *nullifies* all later support orders failing to specifically reference the Arizona order, regardless of the State where entered. This interpretation is totally contrary to the express language of the Arizona URESA provisions: "A support order made by a court of this state *** does not nullify *** a support order made by a court of any other state *** regardless of priority of issuance." (Ariz. Rev. Stat. Ann. § 12—1680 (1994).) Defendant cites no authority which stands for the proposition that a URESA order entered in one State nullifies and precludes enforcement of any subsequent support order issued in another State.

In *People ex rel. Oetjen v. Oetjen* (1980), 92 Ill. App. 3d 699, 416 N.E.2d 278, the Colorado petitioner obtained a divorce in Colorado, which reserved child support. The petitioner then obtained an Illinois URESA order providing for weekly child support. Upon enrolling the Colorado divorce decree in Illinois, the (now Illinois) dissolution court

ordered respondent to pay child support " 'in lieu of' " that ordered in the URESA action, although the dissolution court's order was later abated for petitioner's refusal to allow visitation. (*Oetjen*, 92 Ill. App. 3d at 701, 416 N.E.2d at 280.) Meanwhile, a rule to show cause was entered on behalf of the petitioner in the URESA court on the support arrearage. On appeal of the URESA court's denial of respondent's motion to dismiss, the reviewing court held that a URESA support order "is not automatically modified or nullified by a subsequent order in the divorce action unless the divorce court so specifies" and that the terms " 'in lieu of' " did not specifically nullify the prior URESA order but only meant that the respondent would not have to pay twice on the same order of support. (*Oetjen*, 92 Ill. App. 3d at 703, 416 N.E.2d at 281-82.) The fact that the dissolution order in *Oetjen* could not nullify the prior URESA order because it omitted specific language that it intended to do so does not, as defendant contends in this case, support the proposition that a prior URESA order bars or nullifies a later dissolution order which fails to reference it.

The Arizona case of *Ibach v. Ibach* (1979), 123 Ariz. 507, 600 P.2d 1370, concerned an Arizona support order subsequently modified in a Colorado URESA action. The issue on appeal was whether the Arizona court should have recognized the later Colorado modification in view of the latter court's failure to expressly indicate an intent to modify the prior Arizona order. (*Ibach*, 123 Ariz. at 511, 600 P.2d at 1374.) Again, there is nothing in *Ibach* to support defendant's contention that an out-of-State URESA order will deprive a dissolution court of subject-matter jurisdiction on issues of support, solely because the dissolution court fails to modify the URESA order.

Defendant also cites *In re Marriage of Wettstein* (1987), 160 Ill. App. 3d 554, 514 N.E.2d 783, wherein an Illinois dissolution court had entered a maintenance order for the ex-wife, which an Ohio court on a URESA petition later reduced. The Illinois dissolution court refused to recognize the Ohio modification. On review, this court held that URESA actions were derivative in nature and the antisupersession provisions of section 31 of the Illinois URESA statute (Ill. Rev. Stat. 1983, ch. 40, par. 1231) made clear that the Ohio URESA order did not nullify the order entered in the Illinois dissolution. (*Wettstein*, 160 Ill. App. 3d at 560, 514 N.E.2d at 786.) The court held that the purpose of URESA was to provide an additional means to enforce a duty of support under the laws of the responding State, and that the remedies provided under the Act are " 'in addition to and not in substitution for any other remedies.' " (*Wettstein*, 160 Ill. App. 3d at 557, 514 N.E.2d at 785, quoting Ill. Rev.

Stat. 1985, ch. 40, par. 1203.) Yet, in direct contravention of the purposes of URESA, defendant essentially claims that the Arizona order, by virtue of its being first in time, deprives the Illinois dissolution court of jurisdiction to assess a duty of support found to exist under the laws of Illinois.

In *In re Marriage of Gifford* (1988), 122 Ill. 2d 34, 38-40, 521 N.E.2d 929, 931, the supreme court noted that the acts of a responding State, which may modify the amount the obligor must pay when entering a URESA order, do not modify, vacate, reform, or eliminate the decree of the initiating State. Pursuant to section 12—1680 of the Arizona URESA statute (Ariz. Rev. Stat. Ann. § 12—1680 (1994)), providing that a URESA support order does not nullify a support order made by a court of another State "regardless of priority of issuance," the Arizona order could not have modified, vacated, reformed, or eliminated any orders entered by the Illinois dissolution court, let alone deprived it of jurisdiction. While the Arizona judgment should be accorded full faith and credit, that recognition does not amount to supersession of the support provisions contained in the dissolution judgment. Section 12—1680 of the Arizona URESA statute clearly contemplates entry of concurrent or consecutive support orders.

> "Amounts paid for a particular period pursuant to any support order made by the court of another state shall be credited against the amounts accruing or accrued for the same period under any support order made by the court of this state." Ariz. Rev. Stat. Ann. § 12—1680 (1994).

■ Although not entirely clear, defendant next argues that although section 511 of the Act (Ill. Rev. Stat. 1985, ch. 40, par. 511) provides for the modification of a judgment by a petition with notice mailed to the defendant at his last known address, he was entitled to service of process to notify him of the 1986 petition to show cause which resulted in the entry of judgment on the support accrued since the 1977 divorce decree. Defendant claims he never received notice of the 1986 petition, which was sent by certified mail to his place of employment and signed for by the owner of the business.

In *In re Marriage of Ponsart* (1983), 118 Ill. App. 3d 664, 667, 455 N.E.2d 271, 273, the court held that service by regular mail of a petition for an increase in child support was adequate notice in conformance with Supreme Court Rules 11 and 104 (87 Ill. 2d Rules 11, 104), applicable to supplemental and post-judgment proceedings. Supreme Court Rule 11(b)(3) provided for service on a party not in default by regular mail addressed to his business or residence. (107 Ill. 2d R. 11(b)(3).) Supreme Court Rule 104(b) merely provides for the

filing of a certificate of counsel or other proof that papers have been served on all parties who have appeared or are not otherwise in default. (134 Ill. 2d R. 104(b).) As defendant appeared and filed an answer in the 1977 dissolution proceedings, he was not in default. Since the 1986 judgment was essentially an enforcement action supplemental to the 1977 dissolution for which defendant was not in default, we conclude that no more stringent requirement than service by regular mail, as provided in Supreme Court Rule 11 or 104, is required.

■ Defendant also argues that the court erred in failing to strike the affidavit of the handwriting expert and that a place of employment is not a business address for purposes of Supreme Court Rule 11(b). (107 Ill. 2d R. 11(b).) However, as defendant has raised these issues for the first time in his reply brief, they are waived for purposes of review. 134 Ill. 2d R. 341(e)(7).

■ The defendant next argues that he received insufficient notice of the nonwage garnishment and citation. An amended citation and nonwage garnishment summons were served on Boatmen's on August 10, 1993. Plaintiff's attorney certified that notice of the garnishment was sent to defendant on August 11, 1993, in accordance with section 12—705(b) of the Code of Civil Procedure (Code) (735 ILCS 5/12—705(b) (West Supp. 1993)), requiring notice to judgment debtors within two days of the service of a garnishment. Defendant claims that since section 12—705(b) of the Code requires the sheriff who served the summons for garnishment on Boatmen's to have mailed notice of the garnishment instead to plaintiff's attorney, notice was defective and the garnishment should have been dismissed. This claim is patently without merit. The purpose of this statute is to protect any statutory exemption rights to which the debtor may be entitled. (See *Jacobson v. Johnson* (C.D. Ill. 1991), 798 F. Supp. 500, 504.) Notice mailed by plaintiff's attorney would satisfy this purpose to the same extent as notice mailed by the sheriff. Any irregularities are merely of form and affect no substantive rights. Defendant also makes vague reference to nonspecific constitutional rights relating to section 2—1402 of the Code (735 ILCS 5/2—1402 (West Supp. 1993)), although he admits that section was not in effect at the time of the instant proceedings. (See Pub. Act 88—299, eff. January 1, 1994 (1993 Ill. Laws 2517, 2518).) A reviewing court is entitled to have issues clearly defined, pertinent authority cited, and cohesive legal arguments presented, and issues not adequately presented may be deemed waived. (*Vincent v. Doebert* (1989), 183 Ill. App. 3d 1081, 1087, 539 N.E.2d 856, 860.) Since defendant has failed to present either an issue or an argument in a definitive manner, we find review of the issue is waived.

■ Defendant next argues that because the August 6, 1986, judgment was not enforced within seven years of its entry, it was required to be revived pursuant to section 12—108(a) of the Code (735 ILCS 5/12—108(a) (West 1992)) before the garnishment and citation could be executed. Defendant concludes that since the court's December 15, 1993, order of revival occurred four months after that seven-year period, the judgment became dormant on August 6, 1993, and the amended garnishment and citation served on Boatmen's on August 10, 1993, were invalid. Defendant relies on *Ring v. Palmer* (1941), 309 Ill. App. 333, 32 N.E.2d 956, in support of this view. In that case a creditor had filed a summons for garnishment on the garnishee bank within seven years of a judgment entered against the debtor but the summons was not served until after the seven years had expired. The creditor never filed an action to revive the judgment. The court held that since the judgment upon which the proceedings were based became dormant before service of the summons on the garnishee, no execution on the garnishment could occur. *Ring*, 309 Ill. App. at 335, 32 N.E.2d at 957.

*Ring* is distinguishable from the facts here since no petition to revive the judgment was ever filed in *Ring*, whereas plaintiff's July 7, 1993, request for revival preceded service of the garnishment summons on Boatmen's. No turnover of the sums garnished was ordered prior to entry of the December 15, 1993, order. We hold that for purposes of service of the garnishment summons, revival of the 1986 judgment was effected by the filing of the petition seeking the unpaid support. See *People ex rel. Wray v. Brassard* (1992), 226 Ill. App. 3d 1007, 1013, 589 N.E.2d 1012, 1016.

■ Defendant next argues, without citation to authority, that the spendthrift trust created by his parents was not subject to garnishment because no order of withholding had been served upon it pursuant to section 706.1(B) of the Act (750 ILCS 5/706.1(B) (West 1992)). This contention is without merit. Section 706.1(B) does not require that an order of withholding be served upon a garnishee but merely provides a method for recovery of sums due pursuant to an order of support. (See 750 ILCS 5/706.1(L) (West 1992).) Moreover, the statutory requirements for garnishment proceedings impose no requirement for service of an order of withholding. See 735 ILCS 5/12—705 (West Supp. 1993).

■ Defendant contends that while section 2—1403 of the Code allows for satisfaction of a judgment out of property held in a spendthrift trust for the judgment debtor, collection is limited to sums representing unpaid child support. Therefore, plaintiff is not entitled to garnish the spendthrift trust to the extent of any sums representing unpaid maintenance. Section 2—1403 in relevant part provides:

"No court, except as otherwise provided in this Section, shall order the satisfaction of a judgment out of any property held in trust for the judgment debtor if such trust has, in good faith, been created by, or the fund so held in trust has proceeded from, a person other than the judgment debtor.

The income or principal of a trust shall be subject to withholding for the purpose of securing collection of unpaid child support obligations owed by the beneficiary as provided in Section 4.1 of the 'Non-Support of Spouse and Children Act' and similar Sections of other Acts which provide for support of a child ***." 735 ILCS 5/2—1403 (West 1992).

Section 4.1(A)(1) of the Non-Support of Spouse and Children Act (Non-Support Act) (750 ILCS 15/4.1(A)(1) (West 1992)) parallels section 706.1(A)(1) of the Act (750 ILCS 5/706.1(A)(1) (West 1992)). Both are entitled "Withholding of income to secure payment of support" and define an " 'Order for support' " as "any order of the court which provides for periodic payment of funds for the support of a child or maintenance of a spouse, whether temporary or final." 750 ILCS 15/4.1(A)(1) (West 1992); 750 ILCS 5/706.1(A)(1) (West 1992).

Plaintiff contends that the broad public policy expressed in section 4.1 of the Non-Support Act, together with the supreme court's analysis of that section in *In re Support of Matt* (1985), 105 Ill. 2d 330, 473 N.E.2d 1310, establishes that a spendthrift trust is subject to garnishment for both maintenance and child support arrearages.

When the supreme court decided *Matt* (which sought garnishment of a spendthrift trust for child support arrearages), section 2—1403 of the Code did not include any provision allowing garnishment of spendthrift trusts for unpaid child support. (See Ill. Rev. Stat. 1985, ch. 110, par. 2—1403.) In construing that section, the supreme court looked to provisions of section 4.1 of the Non-Support Act. The court noted that section's definition of " 'income,' " together with the legislature's inclusion of a provision that other laws limiting or exempting income subject to a support order would not apply, indicated the legislature's intent that section 4.1 would prevail over all laws to the contrary, and permit the income from spendthrift trusts to be reached to satisfy the support obligations of a trust beneficiary. *Matt*, 105 Ill. 2d at 333-34, 473 N.E.2d at 1312.

Following *Matt*, the legislature amended section 2—1403 of the Code (Pub. Act. 85—907, art. II, § 1, eff. November 23, 1987 (1987 Ill. Laws. 3802, 3831)) to allow garnishment of the income or principal of a spendthrift trust, to the same extent the trust beneficiary is entitled to reach these funds, for the collection of the beneficiary's past-due child support obligations.

We must conclude that regardless of the broadness of the language in *Matt*, which in any event is limited to its facts, the legislature has shown its intent that garnishment of spendthrift trusts be restricted to collection of unpaid child support by the limitation in the language of section 2—1403 of the Code to "child support," rather than to "maintenance and child support," or simply "support." We are not unmindful that perhaps a more just application of section 2—1403 of the Code would be to overlay the *Matt* court's broad policy analysis of section 4.1 of the Non-Support Act so as to enable collection of maintenance arrearages, particularly where, as here, defendant has an 18-year history of avoiding his support obligations. However, such legislative task is not a function of this court; our role is to ascertain and give effect to the intent of the legislature as reflected in the statute. Accordingly, we remand for a determination by the circuit court, and a deduction from the garnishment order imposed against the spendthrift trust, of any sums representing maintenance due the plaintiff pursuant to the 1986 judgment.

Affirmed in part; reversed in part, and remanded with directions.

COOK and GREEN, JJ., concur.